[No. G040513. Fourth Dist., Div. Three. June 30, 2009.]

CITY OF IRVINE, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS,
Defendant and Respondent.

508

## Counsel

Rutan & Tucker, Philip D. Kohn and William H. Ihrke for Plaintiff and Appellant.

Stephen P. Wiley, City Attorney (Santa Barbara), and N. Scott Vincent, Assistant City Attorney, for City of Santa Barbara, City of Arroyo Grande, City of Bradbury, City of Carlsbad, City of Colton, City of Cypress, City of Diamond Bar, City of Laguna Beach, City of Lodi, City of Nevada City, City of Pasadena, City of Pismo Beach, City of Pittsburg, City of Pleasanton, City

of Reedley, City of San Luis Obispo, City of Signal Hill, City of Vista, City of Westlake Village, City of Yorba Linda, Town of Apple Valley and Town of Paradise as Amici Curiae on behalf of Plaintiff and Appellant.

Fulbright & Jaworski, Colin Lennard; Joanna Africa; Miles • Chen Law Group and Patricia J. Chen for Defendant and Respondent.

Kenneth K. Moy for Association of Bay Area Governments as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—This is an appeal from a judgment dismissing a petition for a writ of mandate entered after the trial court sustained a demurrer to the petition without leave to amend. The issue presented is whether the administrative procedure established under Government Code section 65584 et seq. (all further statutory references are to the Government Code unless otherwise stated) to calculate a local government's allocation of the regional housing needs assessment (RHNA) is intended to be the exclusive remedy for the municipality to challenge that determination and thereby preclude judicial review of the decision. We conclude the answer to this question is yes and affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Since this case involves a dismissal entered after the trial court sustained a demurrer to the petition without leave to amend, we "assume[] the truth of all properly pleaded material facts unless contradicted by judicially noticed matters" and "determine[] whether, reading the petition as a whole and giving it a reasonable interpretation, the pleading states facts sufficient to state a cause of action or a reasonable possibility exists that any defects can be cured by amendment. [Citations.]" (*Burt v. County of Orange* (2004) 120 Cal.App.4th 273, 279 [15 Cal.Rptr.3d 373].)

Plaintiff City of Irvine is a "municipal corporation" in Orange County, "organized and existing under . . . the laws of the State of California." Under section 65300, it "must adopt a comprehensive General Plan governing land use and development within its jurisdictional boundary" of which "[a] Housing Element is a required component . . . ." In turn, the housing element "must consist of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives,

financial resources and scheduled programs for the preservation, improvement and development of housing" and "must also contain . . . a quantification of the city's existing and projected housing needs for all income levels that shall include the locality's share of the regional housing need[] . . . ."

Defendant Southern California Association of Governments is a "public agency organized and existing pursuant to the Joint Exercise of Powers Act (codified as . . . section 6500 et seq.)" covering several southern California counties, including Orange County and the incorporated cities within its boundaries. (Italics omitted.) In 2006, defendant, in conjunction with the Department of Housing and Community Development (HCD), began developing its RHNA for the 2006–2014 planning period which, in part, required the development of a methodology for distributing the projected regional housing needs to cities within defendant's jurisdiction.

Defendant delegated to the Orange County Council of Governments (OCCOG), another public agency created under section 6500 that includes the County of Orange and the incorporated cities within its boundaries, "the responsibility for providing data that would be used by [defendant] when [it] applied the methodology used to determine the allocation of housing units to jurisdictions within Orange County" and, at "OCCOG['s] request[,] . . . incorporate[d]" a study prepared at California State University, Fullerton.

In February 2007, defendant "approved the RHNA methodology and issued a draft regional housing need allocation plan" that allotted over 35,000 residential units to plaintiff, an amount allegedly constituting 43 percent of Orange County's entire regional housing need. Under the applicable statutory procedure, plaintiff timely filed an appeal of the proposed allocation with defendant's RHNA appeals board. That board conducted a hearing on plaintiff's request where plaintiff's and defendant's staffs presented written and oral testimony pursuant to sections 65584.05 and 65584.08. The appeals board "issued [a] final written decision" denying the appeal.

After "revis[ing] the allocations of units to certain jurisdictions within Orange County," defendant then "issued a proposed Final Allocation Plan" that increased plaintiff's RHNA allocation by over 300 units. Plaintiff submitted written opposition to the plan. In July 2007, defendant's regional council conducted a public hearing as required by sections 65584.05, subdivision (h) and 65584.08, subdivision (k) where plaintiff presented written and oral testimony opposing the final allocation plan. The regional council approved the final allocation plan without change.

Plaintiff then filed this petition seeking to "[v]acate and set aside" defendant's draft allocation, the RHNA appeals board's denial of its appeal, and the

regional council's final allocation plan, plus a "[r]ecalculat[ion of plaintiff's] allocation of new housing units in accordance with . . . sections 65584, 65584.04, 65584.05, [and] 65584.08 . . . ." The petition alleged that, in making the RHNA decisions, defendant's appeals board and regional council "failed to conduct . . . fair hearing[s]," "proceed in a manner required by law," "support [their] decision[s] with findings" or "provide sufficient evidence to support the findings," and "prejudicially abused [their] discretion," thereby breaching defendant's "duty pursuant to the Housing Element Law to calculate [plaintiff's] fair share of housing for each income category . . . ."

Defendant filed a demurrer, arguing the court lacked "jurisdiction of the subject of the petition" for several reasons. First, it asserted the Legislature's 2004 amendments to the RHNA statutes "specifically removed the judicial writ remedy from the . . . statute." Second, citing section 65584.05, subdivision (g)'s requirement that it reallocate "[a]ny reduction in" one municipality's RHNA assessment "to all of [the] jurisdictions" it covers, defendant claimed "the remedy sought . . . will result in judicial consequences that will adversely impact all of [defendant's] jurisdictions" and plaintiff has "no cause of action . . . to seek judicial enforcement of another city['s] or county's RHNA allocation." Finally, noting HCD's approval of defendant's final RHNA allocation, defendant claimed it now "has no authority to implement [the] relief" sought by plaintiff. The trial court sustained the demurrer without leave to amend and entered a judgment dismissing the action.

## DISCUSSION

### 1. Statutory Background

This case presents the question of whether the administrative procedure created to determine a municipality's RHNA allocation precludes judicial review of that decision.

Under the Planning and Zoning Law (§ 65000 et seq.), local governments must prepare and adopt general plans for their "long-term . . . physical development . . . ." (§ 65300.) One of the essential components of a general plan is a housing element. (§ 65302, subd. (c).)

The Legislature has declared "[t]he availability of housing is of vital statewide importance . . ." (§ 65580, subd. (a)), "[t]he early attainment of" which (§ 65580, subd. (b)), along with the additional goal of providing "housing affordable to low- and moderate-income households" (§ 65580, subd. (c)), requires the cooperation of government at all levels. Thus, "[l]ocal and state governments have a responsibility to use the powers vested in them to facilitate the improvement and development of housing to make adequate

provision for the housing needs of all economic segments of the community." (§ 65580, subd. (d).) The statutes governing the development of housing elements express the Legislature's intent "[t]o assure" local governments "recognize their responsibilities in contributing to the attainment of the state housing goal" (§ 65581, subd. (a)), in part by "prepar[ing] and implement-[ing] housing elements which, along with federal and state programs, will move toward attainment of th[at] . . . goal" (§ 65581, subd. (b)), and "ensure . . . local government[s] cooperate[] with [each] other . . . in . . . address[ing] regional housing needs" (§ 65581, subd. (d)), while "recogniz[ing] that each locality is best capable of determining what efforts are required by it to contribute to the attainment of the state housing goal, provided such a determination is compatible with the state housing goal and regional housing needs" (§ 65581, subd. (c)).

A municipality's housing element "consist[s] of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives, financial resources, and scheduled programs for the preservation, improvement, and development of housing." (§ 65583.) It must contain "[a]n assessment of housing needs and an inventory of resources and constraints relevant to the meeting of these needs." (§ 65583, subd. (a).) This consists of "a quantification of the locality's existing and projected housing needs for all income levels" that "include[s] the locality's share of the regional housing need in accordance with Section 65584" (§ 65583, subd. (a)(1)), "[a] statement of the community's goals, quantified objectives, and policies relative to the maintenance, preservation, improve-ment, and development of housing" (§ 65583, subd. (b)(1)), and "[a] program which sets forth a schedule of actions during the planning period, each with a timeline for implementation . . . that the local government is undertaking or intends to undertake to implement the policies and achieve the goals and objectives of the housing element . . . ." (§ 65583, subd. (c).)

As for each municipality's regional housing need allocation, section 65584, subdivision (b) requires HCD, "in consultation with each council of govern-ments," such as defendant, to "determine [a] region's existing and projected housing need pursuant to Section 65584.01." This determination must be based on the "objectives" of equitably increasing the housing supply, type, and affordability, encouraging conservation of agricultural and environmental resources through the promotion of infill development, improving the rela-tionship between housing and jobs in the region, and using the allocation of housing needs by income category to eliminate disparities between communi-ties in the region. (§ 65584, subd. (d).) Thus, before a region's "scheduled [housing element] revision . . . [HCD] shall meet and consult with the council of governments regarding the assumptions and methodology to be used by the department to determine the region's housing needs." (§ 65584.01, subd. (c)(1).) After this consultation, HCD must "make a determination of the

region's existing and projected housing need," which must "reflect the achievement of a feasible balance between jobs and housing within the region using the regional employment projections in the applicable regional transportation plan." (§ 65584.01, subd. (d)(1).)

The council of governments may object to HCD's decision on certain specified grounds, but the objection "shall [also] include a proposed alternative determination of its regional housing need . . . ." (§ 65584.01, subd. (d)(1), (2)(B).) "[HCD] shall consider the objection and make a final written determination of the region's existing and projected housing need that includes an explanation of the information upon which the determination was made." (§ 65584.01, subd. (d)(3).)

Section 65584.04 declares a council of governments shall then "develop a proposed methodology for distributing the existing and projected regional housing need to cities, counties, and cities and counties within the region . . . ." (§ 65584.04, subd. (a).) To do so, the council "shall survey . . . its member jurisdictions to request . . . information regarding [a list of] factors . . . that will allow the development of [the distribution] methodology . . . ." (§ 65584.04, subds. (b)(1), (d).) "Public participation and access shall be required in the development of the methodology and in the process of drafting and adoption of the allocation of the regional housing needs," with the "[t]he council . . . conduct[ing] at least one public hearing to receive oral and written comments on the proposed methodology." (§ 65584.04, subd. (c).) "Following the . . . public comment period . . . , and after making . . . revisions deemed appropriate . . . as a result of comments received," the "council . . . shall adopt a final regional . . . housing need allocation methodology and provide notice of [its] adoption . . . to the jurisdictions within the region . . . ." (§ 65584.04, subd. (h).)

While the parties to this action were in the process of determining the RHNA allocation for defendant's region, the Legislature enacted section 65584.08, effective April 10, 2007, which expressly applies to the "revision of the housing element" for municipalities "within [defendant's] region . . . ." (§ 65584.08, subd. (b).) Section 65584.08 required defendant to first "develop an integrated long-term growth forecast by five-year increments." (§ 65584.08, subd. (c)(1).) "Upon receiving the forecast, [HCD] shall determine the existing and projected housing need for the region in accordance with . . . Section 65584.01." (§ 65584.08, subd. (c)(5).) Then defendant was mandated to "conduct a public workshop for the purpose of surveying its member jurisdictions pursuant to subdivision (b) of Section 65584.04." (§ 65584.08, subd. (d).) In addition, defendant was required to "conduct a minimum of 14 public workshops to discuss the regional growth forecast and the methodology, including the factors, by which housing needs are proposed to be allocated . . . to individual jurisdictions." (§ 65584.08, subd. (f).)

After adopting a methodology, the next step involved the preparation and revision of a draft allocation plan for the RHNA. It requires a "council of governments . . . [to] distribute a draft allocation of regional housing needs to each local government in the region or subregion" "[a]t least one and one-half years prior to the scheduled [housing element] revision . . . ." (§ 65584.05, subd. (a).) "The draft allocation shall include the underlying data and methodology on which the allocation is based." (*Ibid.*)

"Within 60 days following receipt of the draft allocation, a local government may request . . . a revision of its share of the regional housing need . . . supported by adequate documentation." (§ 65584.05, subd. (b); see § 65584.08, subd. (g) [authorizing a local government under defendant's jurisdiction to request a revision of its regional housing need share on the same grounds and in the same manner as set out in § 65584.05].) The council of governments must then decide to either "accept the proposed revision, modify its earlier determination, or indicate, based upon the information and methodology . . . why the proposed revision is inconsistent with the regional housing need." (§ 65584.05, subd. (c); see § 65584.08, subd. (g) ["association . . . shall respond to the request in writing . . . and shall describe the rationale for its decision"].)

"If the council . . . does not accept the proposed revised share or modify the revised share to the satisfaction of the requesting party, the local government may appeal its draft allocation based upon . . . the following criteria: [¶] . . . The council . . . failed to adequately consider the information submitted . . . , . . . a significant and unforeseen change in circumstances has occurred . . . that merits a revision of the information submitted," or "[t]he council . . . failed to determine its share of the regional housing need in accordance with the information described in, and the methodology established . . . ." (§ 65584.05, subd. (d); see § 65584.08, subd. (i) [allowing defendant "one appeal of [a] draft allocation" on similar grounds].)

"The council of governments . . . shall conduct public hearings to hear all appeals . . . . Before taking action on an appeal, the council of governments . . . shall consider all comments, recommendations, and available data based on accepted planning methodologies submitted by the appellant," and its "final action . . . on an appeal shall be in writing and shall include information and other evidence explaining how its action is consistent with this article." (§ 65584.05, subd. (e); see § 65584.08, subd. (i).) If an appeal is successful, "[t]he final action . . . may require the council of governments . . . to adjust the allocation of a local government that is not the subject of an appeal" (§ 65584.05, subd. (e)), but "[i]n no event shall the total distribution of housing need equal less than the regional housing need, as determined pursuant to Section 65584.01 . . . ." (§ 65584.05, subd. (g)).

The "council of governments . . . shall [then] issue a proposed final allocation," which "include[s] responses to all comments received on the proposed draft allocation and reasons for any significant revisions included in the final allocation." (§ 65584.05, subd. (f); see also § 65584.08, subd. (h).) "[T]he proposed final allocation plan . . . shall [also] adjust allocations to local governments based upon the results of the revision request process and the appeals process specified in this section." (§ 65584.05, subd. (g).) "Within 45 days after the issuance of the proposed final allocation plan . . . the council of governments shall hold a public hearing to adopt a final allocation plan," and "[w]ithin 60 days after adoption by the council . . . , [HCD] shall determine whether or not the final allocation plan is consistent with the existing and projected housing need for the region . . . . [HCD] may revise the determination of the council of governments if necessary to obtain this consistency." (§ 65584.05, subd. (h); see § 65584.08, subd. (k).)

### 2. *Judicial Jurisdiction*

■ The California Constitution grants "[t]he Supreme Court, courts of appeal, superior courts, and their judges . . . original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." (Cal. Const., art. VI, § 10.) The Supreme Court has recognized "the Legislature cannot alter the jurisdiction over extraordinary writs . . . prescribed by the Constitution" (*Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 729 [192 P.2d 916]), and therefore "such jurisdiction could not be enlarged, and . . . could not be curtailed [citation]" (*id.* at p. 731).

Nonetheless, it is recognized the Legislature may indirectly regulate the jurisdiction of courts by abolishing or limiting substantial rights (*Modern Barber Col. v. Cal. Emp. Stab. Com., supra*, 31 Cal.2d at pp. 726–728; 2 Witkin, Cal. Procedure (5th ed. 2008) Courts, § 170, pp. 242–243) and prescribing the procedure by which the courts exercise their jurisdiction (*Garrison v. Rourke* (1948) 32 Cal.2d 430, 436 [196 P.2d 884], overruled on another ground in *Keane v. Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261]; 2 Witkin, Cal. Procedure, *supra*, Courts, § 171, p. 243). Citing the foregoing principles, *County of San Diego v. State of California* (1997) 15 Cal.4th 68 [61 Cal.Rptr.2d 134, 931 P.2d 312] held " '[t]he jurisdiction thus vested may not lightly be deemed to have been destroyed.' [Citation.] 'While the courts are subject to reasonable statutory regulation of procedure and other matters, they will maintain their constitutional powers in order effectively to function as a separate department of government. [Citations.] Consequently an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication.' [Citation.]" (*Id.* at p. 87.) Thus, "[t]he intent to divest the court of jurisdiction . . . is not read into [a] statute unless that result is expressly

provided or otherwise clearly intended." (*Garrison v. Rourke, supra*, 32 Cal.2d at p. 435; see also *County of San Diego v. State of California, supra*, 15 Cal.4th at p. 87.)

3. *Analysis*

The trial court reached the correct result in this case. Concededly, the RHNA statutes do not expressly bar a municipality from judicially challenging its RHNA allocation. But, as the foregoing summary of the statutory procedure reflects, the nature and scope of a general plan's housing element and the length and intricacy of the process created to determine a municipality's RHNA allocation reflects a clear intent on the part of the Legislature to render this process immune from judicial intervention.

■ In construing a statute "[o]ur fundamental task . . . is to ascertain the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin our inquiry by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] In doing so, however, we do not consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Mendoza* (2000) 23 Cal.4th 896, 907–908 [98 Cal.Rptr.2d 431, 4 P.3d 265].)

The RHNA allocation process must be completed in advance of the revision of a municipality's general plan housing element. It involves several intricate steps. First, it requires the setting of statewide and regional housing goals and the creation of a methodology to quantify the goals and distribute the projected additional housing needs throughout the state. This step mandates consultation between HCD and the respective councils of government. Second, each respective council of government must create a methodology for distributing its region's housing needs to the local governments under its jurisdiction. This requires not only consultation between the regional council of government and local governments, but also public hearings to obtain input from a wide variety of concerned parties. Third, the council of government's proposed allocation of housing units to local governments is subject to review and reassessment at the request of individual governments. Ultimately, each council of government's final RHNA allocation is subject to further review and revision by HCD to ensure it is consistent with the region's housing needs.

Plaintiff argues it is only seeking to correct its own RHNA allocation and thus allowing its action to proceed will not derail other municipalities from timely revising their housing elements. But its petition alleges, not that the RHNA allocation for the Orange County subregion is too large, but that defendant allocated too much of the subregion's RHNA allocation to it. The petition asks the court to vacate and set aside the denial of plaintiff's appeal of the draft allocation plan and defendant's final allocation plan, and seeks a "[r]ecalculat[ion]" of plaintiff's "allocation of new housing units" under "sections 65584, 65584.04, 65584.05, [and] 65584.08 . . . ."

■ Under the RHNA procedure, when a local government successfully obtains a downward revision of its RHNA allocation, the council of governments must then reallocate the excess units to other jurisdictions within the region. (§ 65584.05, subds. (e) ["The final action on an appeal may require the council of governments . . . to adjust the allocation of a local government that is not the subject of an appeal."], (g) ["In the proposed final allocation plan, the council of governments . . . shall adjust allocations to local governments based upon the results of the revision request process and the appeals process . . . ."].) Thus, one jurisdiction's successful appeal affects the RHNA allocation to other local jurisdictions. It does not merely result in the elimination of one municipality's excess RHNA allocation.

Consequently, allowing this judicial action to proceed would require the joining of all affected local jurisdictions in the lawsuit, thereby precluding each affected municipality's completion of its housing element revision. As the trial court noted, "allowing judicial review would . . . delay the allocation for an entire region" and "essentially bottleneck the process and create gridlock while a particular city's case winds through the courts." Plaintiff's claim is thus not only contrary to the relief sought in its petition, but would effectively nullify the cited statutory provisions. "An interpretation that renders related provisions nugatory must be avoided . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

One decision on which defendant relies, *Tri-County Special Educ. Local Plan Area v. County of Tuolumne* (2004) 123 Cal.App.4th 563 [19 Cal.Rptr.3d 884], presents a situation analogous to this case. In *Tri-County*, public entities created to assist students requiring access to special education and related services sued a county and several of its officers to reverse the defendants' decision to terminate funding for mental health services and force defendants to comply with the federal Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.; IDEA). The complaint alleged numerous causes of action, including violation of both the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) and the federal Civil Rights Act (42 U.S.C. § 1983). The trial court dismissed the action after sustaining the defendants' demurrers without leave to amend.

Although disagreeing with the trial court's reasoning, the Court of Appeal affirmed. First, the appellate court cited procedures established under the IDEA and the California Code of Regulations providing for an investigation and report by the state Superintendent of Public Instruction upon receipt of a complaint alleging a public agency had " 'fail[ed] or refuse[d] to comply with an applicable law or regulation relating to the provision of free appropriate public education to handicapped individuals,' " which allowed local public agencies to claim reimbursement for services under the IDEA from a public agency that failed to pay for them. (*Tri-County Special Educ. Local Plan Area v. County of Tuolumne, supra,* 123 Cal.App.4th at pp. 574–575.) It concluded this "administrative process is fully capable of providing complete relief to appellants." (*Id.* at p. 577.)

As for the civil rights claims, which plaintiffs argued were not subject to administrative review, the appellate court ruled as follows: "The considerations that arise in requiring an *individual* to pursue an administrative remedy within the structure of the governmental entity that has deprived him or her of rights are somewhat different from the considerations when one subordinate government entity is required to invoke the administrative adjudicatory powers of a superior administrative body to resolve a dispute between the complainant and another subordinate entity. [¶] The first important consideration is that a governmental entity has no vested, individual rights in the administration of a particular program. [Citation.] Appellants are purely creatures of statute, and it is clear the Legislature could reassign administration of IDEA programs to a different entity if it chose to do so. If the Legislature were to so choose, appellants would not be entitled to any sort of due process hearing or appeal to contest the action. [Citation.] [¶] Second, and of greater importance, the statutory scheme clearly intends to invest the Superintendent of Public Instruction with the discretion to determine how and whether IDEA will be enforced against a community mental health department. . . . [¶] As a result of these two factors, we conclude appellants have no rights enforceable against respondents through other causes of action, at least until the administrative process confers upon them such a right . . . ." (*Tri-County Special Educ. Local Plan Area v. County of Tuolumne, supra,* 123 Cal.App.4th at pp. 577–578.)

█ These considerations apply in this context as well. Plaintiff is a governmental entity (Cal. Const., art. XI, § 2; Gov. Code, § 34000 et seq.) As explained above, the structure and scope of the RHNA statutes reflect a clear intent to vest in HCD and the respective council of governments, along with the extensive input from local governments and the public, the authority to set the RHNA allocation for each local government.

█ Plaintiff argues a construction of the RHNA statutes that eliminates a municipality's right to seek judicial relief from its housing unit allocation

would render the law both absurd and unconstitutional because it makes defendant not only the "executive decision-maker for housing allocations" but "also the final judge, jury and appellate tribunal for any alleged violations of those laws . . . ." Although the RHNA allocation process is primarily legislative rather than adjudicatory in nature and involves the actions of more than a single entity, even where a single administrative agency conducts an adjudicatory proceeding, the Supreme Court has recently reaffirmed that "the combination of investigative, prosecutorial, and adjudicatory functions within a single administrative agency does not create an unacceptable risk of bias and thus does not violate the due process rights of individuals who are subjected to agency prosecutions. [Citations.]" (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737 [88 Cal.Rptr.3d 610, 199 P.3d 1142].)

■ As for the RHNA allocation process, it is clear neither defendant nor any other single entity has complete control of the scheme. HCD must initially establish, "in consultation" with the council of governments, the "region's existing and projected housing need." (§ 65584, subd. (b).) Each respective council of governments then must develop a methodology for distributing the housing needs to the local governments in its region. Again, by statute, the council of governments must consult with both the affected municipalities and the public in accomplishing this task. (§ 65584.04, subds. (a), (b), (c).) This participation also spills over into the development of the draft RHNA allocation. (§ 65584.04, subd. (c).) The local governments are then allowed to seek revision of the draft plan through an appeal to the council of government's appeals board. In ruling on a request, the latter entity must give reasons for its decision in writing. Further public hearings must follow before the council of governments prepares its final allocation plan. Finally, once that plan is approved at the regional level it must be reviewed and approved by HCD to determine if it is consistent with statewide goals.

Claiming "the statutes plainly require a compliant housing element to account for 100[ percent] of the city's RHNA allocation," plaintiff argues that without judicial review of the allocation it has no adequate alternative remedy. This is not accurate.

Section 65584 declares, "While it is the intent of the Legislature that cities, counties, and cities and counties should undertake all necessary actions to encourage, promote, and facilitate the development of housing to accommodate the entire regional housing need, it is recognized, however, that future housing production may not equal the regional housing need established for planning purposes." (§ 65584, subd. (a)(2).) In addition, section 65583, subdivision (b)(2) provides: "It is recognized that the total housing needs identified pursuant to subdivision (a) may exceed available resources and the

community's ability to satisfy this need within the content of the general plan requirements . . . ," and "[u]nder these circumstances, the quantified objectives need not be identical to the total housing needs. The quantified objectives shall establish the maximum number of housing units by income category, including extremely low income, that can be constructed, rehabilitated, and conserved over a five-year time period."

Plaintiff's claim that the statutory language contained in specific aspects of the housing element contradicts the foregoing provisions is unavailing. As noted, we must consider the RHNA statutes as a whole, harmonizing the various parts of it, and consider them in the context of the overall statutory framework rather than in isolation. (*People v. Mendoza, supra,* 23 Cal.4th at pp. 907–908.)

■ Our conclusion is buttressed by a 2005 opinion by the California Attorney General that reached the following conclusion on the effect of section 65583, subdivision (b)(2): "A community may establish its maximum number of housing units by income category that can be constructed, rehabilitated, and conserved over the next five-year period below the number of housing units that would meet the community's goal of achieving its share of the regional housing needs established pursuant to the Planning and Zoning Law if the community finds that its available resources in the aggregate, including but not limited to federal and state funds for its housing programs, its own local funds, tax or density credits, and other affordable housing programs, are insufficient to meet those needs." (88 Ops.Cal.Atty.Gen. 84 (2005).) Even though the Attorney General's opinion is not binding on us, it is entitled to great weight and, in the absence of contrary controlling authority, persuasive. (*Rodeo Sanitary Dist. v. Board of Supervisors* (1999) 71 Cal.App.4th 1443, 1448–1449 [84 Cal.Rptr.2d 601].)

Support for our decision also exists in the 2004 amendments to the RHNA statutes. Before those amendments, former section 65584, subdivision (c)(4) declared, "The determination of the council of governments [concerning a city or county's share of the state housing need] . . . shall be subject to judicial review pursuant to Section 1094.5 of the Code of Civil Procedure." This provision was eliminated in 2004. In addition, defendant notes a 2005 amendment to section 65589.5, a statute involving very-low-, low-, and moderate-income housing developments, that added a provision declaring "any action brought to enforce the provisions of this section shall be brought pursuant to Section 1094.5 of the Code of Civil Procedure . . . ." (§ 65589.5, subd. (m).)

■ While the latter amendment is of little relevance here, we conclude the 2004 repeal of the judicial remedy reinforces our conclusion the Legislature clearly intended to eliminate judicial remedies for challenging a municipality's RHNA allocation. "Under the rules governing statutory construction, when the Legislature enacts an amendment, we presume that this ' "indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one." ' [Citation.] ' "Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights." ' [Citations.]" (*Garrett v. Young* (2003) 109 Cal.App.4th 1393, 1404–1405 [1 Cal.Rptr.3d 134].) This presumption applies where "the Legislature . . . delet[es] an express provision of a statute." (*People v. Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]; see also *Hoschler v. Sacramento City Unified School Dist.* (2007) 149 Cal.App.4th 258, 269 [57 Cal.Rptr.3d 115] [" 'Where the Legislature omits a particular provision in a later enactment related to the same subject matter, such deliberate omission indicates a different intention which may not be supplanted in the process of judicial construction.' "].) We must presume the Legislature's deletion of the express provision allowing review by administrative mandamus reflects its intent to preclude that judicial remedy to challenge a municipality's RHNA allocation under the revised law.

Plaintiff argues the use of legislative history reflects the RHNA statutes are ambiguous and therefore fail to express a clear intent to eliminate the judicial remedy of mandamus. But " ' "[t]he very fact that the prior act is amended demonstrates the intent to change the pre-existing law, and the presumption must be that it was intended to change the statute in all the particulars touching which we find a material change in the language of the act." ' " (*Loew's, Inc. v. Byram* (1938) 11 Cal.2d 746, 750 [82 P.2d 1].) Thus, when considered along with the clear intent discussed above, the foregoing principles of statutory construction simply buttress our conclusion.

■ Given the RHNA statutes' nature, their allowance for public input, and their lengthy and extensive administrative procedure, it is clear the Legislature intended to eliminate resort to traditional judicial remedies to challenge a local government's regional housing needs allocation so as to avoid the disruption of local planning that would result from interference through the litigation process. Thus, contrary to plaintiff's argument, the statutes governing the RHNA allocation procedure do reflect a clear intent to preclude judicial intervention in the process and the trial court properly found it lacked jurisdiction to review the propriety of plaintiff's RHNA allocation.

## DISPOSITION

Appellant's requests for judicial notice are granted. The judgment is affirmed. Respondent shall recover its costs on appeal.

Moore, J., and Ikola, J., concurred.

A petition for a rehearing was denied July 21, 2009, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 14, 2009, S175329.