ARC STUDENTS FOR LIBERTY CAMPAIGN, an unincorporated association, Plaintiff,

v.

LOS RIOS COMMUNITY COLLEGE DISTRICT, Brice W. Harris, Chancellor, in his official capacity; William V. Karns, Vice Chancellor in his capacity, and Does 1–10, Defendants.

No. CIV. S–09–2446 LKK/GGH.

United States District Court, E.D. California.

Aug. 11, 2010.

David Lewis Llewellyn, Jr., Llewellyn Spann, Citrus Heights, CA, for Plaintiff.

Claudia Leed, Louis Anthony Leone, Katherine Ann Alberts, Stubbs & Leone, Walnut Creek, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

This case concerns an election for a Student Trustee at Los Rios Community College District. After perceived voting irregularities, the community college district invalidated an election and had leaders from each school in the district select the Student Trustee for the following year. Plaintiff has moved for summary judgment. Defendants have moved to dismiss plaintiff's case on the grounds of mootness. For the reasons described below, plaintiff's motion for summary judgment is granted, and defendant's motion for dismissal is denied.

## I. BACKGROUND

On April 21 and 22 of 2009, the Los Rios Community College District ("District") held an election at its member colleges for a Student Trustee. Following the election for the Student Trustee, defendant Vice Chancellor William K. Karns and other members of the executive staff of the District learned of irregularities in the sched-uling of voting hours. Specifically, the District's largest college, American River College ("ARC"), advertised that its polls would be open from 9:00 a.m. to 9:00 p.m. on both days, two hours later than the District permitted and than students at the other schools were allowed to vote. ARC kept the polls open until 9:00 p.m. on the first day, but then, without notice to the student body, closed the polls at 7:00 p.m. on the second day. The District concluded that the irregularities in ARC's polling hours led to the disenfranchisement of students at the other colleges on the first day in that they could not vote after 7 p.m. and students at ARC who tried to vote on the second day after 7 p.m. believing that the polling was open until 9 p.m. The District has presented evidence that a significant number of students were likely disenfranchised. The District considered several options to overcome the irregularities it perceived in the trustee election, including conducting a new election, which it decided against due to lack of monetary resources and scheduling issues with summer break approaching. Ultimately, the District decided to invalidate the election and allow student representatives from each college to select the Student Trustee.

Subsequently, the District passed regulations to deal with irregularities in elections for Student Trustees. These regulations provide that if the election for Student Trustee is unfair, the board may take several actions to ensure fairness, including invalidating the election and selecting a Student Trustee in the manner in which the April 2009 selection proceeded. These regulations also have transferred responsibility for regulating the elections from the student body to District employees.

The term of the Student Trustee selected in April 2009 has ended. A new election for this year's Student Trustee was

held in April 2010. A student has been elected, and will be seated in the fall, for this position.

## II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 853 (9th Cir.1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.,* 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *see also First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. 1575. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* )); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

## III. ANALYSIS

### A. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment on the Grounds of Mootness

#### 1. Generally

■ Defendants argue that plaintiff's claims are moot and, thus, this case should be dismissed. Plaintiff sought preliminary injunctive relief to require the district to count the votes in the election and seat the student who obtained the most votes for the 2009–2010 school year term. That term has since passed. As such, plaintiff's claim to seat the student who obtained the most votes in the April 2009 election is moot. However plaintiff's complaint also seeks permanent injunctive relief enjoining defendants from "future unlawful interference with student elections" as well as declaratory relief from this court indicating that the district violated the due process rights of plaintiff's members in their handling of the April 2009 election.

Compl. 1. These claims are simply not moot.

■ Further, plaintiff's claim epitomizes the exception to mootness of "capable of repetition, yet evading review". This exception applies when two criteria are met. First, there must be a reasonable chance that the plaintiff will suffer the injury again. *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007). Second, the injury must be of inherently limited duration so that it is likely to always become moot before federal litigation is completed. *Id.* For example, in *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a seminal case concerning laws prohibiting abortion, the Supreme Court denied a request by defendants to dismiss on the grounds of mootness where the plaintiff was no longer pregnant because the duration of pregnancy was inherently likely to be shorter than the time required for federal court litigation. Likewise here, the Student Trustee is elected annually. Defendants would be able to evade review of their actions concerning the election if every challenge to an election became moot with the election of a new Student Trustee. As described below, the regulations passed by the District demonstrate a likelihood that defendant will again refuse to seat a popularly elected Student Trustee due to perceived irregularities in an election.

### 2. The Amended Policy and Regulation

Defendants largely misconstrues the nature of plaintiff's claim. Plaintiff is not making a facial challenge to regulations that were promulgated after the contested election. These regulations set forth a procedure where the district may, under circumstances similar to the controversy at issue here, invalidate an election and seat a student who is not popularly elected. Plaintiff argues that defendants lack the authority to do so either through the District's general authority, or through the passing of regulations. The regulations discussed in detail throughout defendants' papers demonstrate that there is a significant chance that defendants will take similar actions again.

Thus, the instant case is distinguishable from *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), where the Supreme Court held that a plaintiff seeking injunctive or declaratory relief must show a likelihood of future harm. *Id.* at 105, 103 S.Ct. 1660. In *Lyons*, plaintiff brought a suit to enjoin as unconstitutional the use of chokeholds by the Los Angeles Police Department in instances where the police were not threatened with death or serious bodily injury. *Id.* at 98, 103 S.Ct. 1660. The Court reasoned that while Lyons could bring a suit seeking damages for injuries resulting from the chokehold, he did not have standing to enjoin the police because he could not demonstrate a substantial likelihood that he, personally, would be choked again in the future. *Id.* at 110, 103 S.Ct. 1660. What was critical to the Court's reasoning was that Lyons could not show that he was any more likely than anyone else to be choked in the future. *Id.*

■ Here, however, plaintiff, a student group involved in elections at American River College, is more likely than the general population to be subject to the District's regulation of the election for Student Trustee. Further, the District's promulgation of the regulations following this incident that specifically allow for a Student Trustee to be selected through a means other than popular vote demonstrates a likelihood that plaintiff will suffer this injury again. Further, it appears that plaintiff contends that the irregularities that caused the District to invalidate the April 2009 election were a pretext to

prevent plaintiff's chosen candidate from election. To the extent that plaintiff's political goals remain at odds with those of the District, plaintiff has demonstrated that it is more likely than the general population to have its members' due process rights violated in the future. Plaintiff is not seeking to invalidate the regulations as unconstitutional. Rather, plaintiff is seeking to enjoin the district from invalidating an election for Student Trustee and, then, allowing a candidate who has not been popularly elected to hold the office of Student Trustee. Plaintiff seeks to enjoin this activity whether through formal regulation or the informal, general authority of the district.

### B. Plaintiff's Motion for Summary Judgment [1]

■ Plaintiff moves for summary judgment on the grounds that defendants' conduct here violated the Due Process Clause of the federal Constitution. Essentially, it argues first that the state legislature requires that the Student Trustee at the District be elected by a popular vote of the students enrolled in the District colleges. Second, plaintiff argues that defendants' actions preventing the election of the Student Trustee contravenes state law and violated the Due Process Clause of the federal Constitution. Plaintiff does not raise any arguments as to whether injunctive relief is proper and as to what the appropriate scope and nature of such relief should be. Consequently, the court construes plaintiff's motion as a motion for partial summary judgment as to liability. Because the court grants plaintiff's motion for partial summary judgment, plaintiff is

instructed to file a motion as to remedy such that it will be heard on September 27, 2010. In order for permanent injunctive relief to issue, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms* — U.S. ——, 130 S.Ct. 2743, 2756, 177 L.Ed.2d 461 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). The parties are directed to respond to page 2760–61 of *Monsanto Co.*, where the Court holds, "[I]f and when [defendant] pursues [conduct] that arguably runs afoul of [federal law], [plaintiff] may file a new suit challenging such action and seeking appropriate preliminary relief.... Accordingly, a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm." Further, the parties shall address the scope and nature of appropriate injunctive relief.

### 1. State Law and Regulations [2]

■ Section 72023.5(a) of the California Education Code provides that the Student Trustee for each community college district "shall be chosen, and shall be recalled, by the students enrolled in the community colleges of the district in accordance with procedures prescribed by the governing board." The Student Trustee is

---

**1.** The court notes that plaintiff's motion could be read to suggest that he is seeking relief for a violation of the First Amendment of the U.S. Constitution as well as the Due Process Clause. At no time before this motion has plaintiff raised the issue. As such, the court concludes that plaintiff's motion only seeks summary judgment under the Due Process Clause.

**2.** The court notes that the reasoning from its November 19, 2009 order denying plaintiff's motion for a preliminary injunction, for the most part, remains unchanged.

a nonvoting member of the board of trustees. Moreover, the Student Trustee's powers are limited to: (1) "attending each and all meetings of the governing board, except . . . executive sessions of the governing board;" (2) being "seated with the members of the governing board and . . . recognized as a full member of the board at meetings, including receiving all materials presented to the board members and participating in the questioning of witnesses and the discussion of issues;" (3) making and seconding "motions at the discretion of the governing board;" and (4) attending "closed sessions, other than closed sessions on personnel matters or collective bargaining matters, at the discretion of the board." Cal. Educ.Code § 72023.5(a-b).

■ In support of its motion, plaintiff cites to an Opinion of the California Attorney General concerning the election of Student Trustees. After considering whether a community college district governing board may establish procedures where the Student Trustee could, among other options, be appointed by the board, the opinion concludes that "student members must be selected in an election by a majority or plurality of all community college students enrolled in the district" because "no other intent can be reasonably ascribed to the Legislature." Office of the Attorney General, State of California, Opin. No. CV 78–104 (Mar. 23, 1979). Under California law, the Attorney General's opinions are not binding, yet are "entitled to great weight and, in the absence of contrary controlling authority, persuasive." *City of Irvine v. S. Cal. Ass'n of Gov'ts,* 175 Cal.App.4th 506, 521, 96 Cal.Rptr.3d 78 (Cal.Ct.App.2009).[3]

In essence, defendants' argument is that vacating the election and appointing a Student Trustee does not violate state law because doing so was within the District's discretionary authority. In support of this argument, defendants refer to Section 70902 of the California Education Code. This section provides that, (1) "The governing board of each community college district shall establish rules and regulations not inconsistent with the regulations of the board of governors and the laws of this state for the government and operation of one or more community colleges in the district," *id.* at § 70902(a)(2); and (2) "In carrying out the powers and duties specified in [California Education Code Section 72023.5], the governing board of each community college district shall have full authority to adopt rules and regulations, not inconsistent with the regulations of the board of governors and the laws of this state, that are necessary and proper to executing these prescribed functions," *id.* at § 70902(c).

Defendants maintain that the election irregularities discussed above caused the election to violate § 72023.5. Consequently, they argue they were permitted to invalidate the election and initiate a process for selection of a Student Trustee. Defendants do not provide any specific statutory support for their authority to invalidate an election with irregularities or to initiate a process to select a Student Trustee who is not popularly elected. Rather, they rely on their general discretionary authority. This discretionary authority, however, is clearly limited by the regulations the board has promulgated and the laws of California.

In plaintiff's motion for a preliminary injunction, the parties spent significant time discussing whether the irregularities in the Student Trustee election rise to the level that would warrant invalidation of the election. See November 19, 2009 Order,

3. Whether such deference should be accorded by a United States District Court is open to doubt. Be that as it may, the statute seems plain on its face without reference to the Attorney General's opinion.

ECF No. 19, at 9–10. This issue does not appear to be relevant in the instant motion. Specifically, plaintiff now argues that the issue is whether the District may enact policies or take actions that would prevent a Student Trustee from being elected by the students in the District's colleges. Accordingly, the court need not decide under what criteria the District may invalidate an election. Rather, the court's inquiry is whether the District may decide, through discretionary acts or through regulations, to seat a Student Trustee who has not been elected by the student bodies of the District's colleges.[4]

## 2. Violation of Constitutional Due Process

■ The fundamental question to be answered is whether the invalidation of the election, in violation of state law, also violated rights protected by the Fourteenth Amendment. "[A] mere error of state law, ... is not a denial of due process." *Rivera v. Ill.* —— U.S. ——, 129 S.Ct. 1446, 1454, 173 L.Ed.2d 320 (2009), *quoting Engle v. Isaac*, 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). "The Due Process Clause ... safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness ....'" *Id., quoting*, 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

### a. Substantive Due Process Rights In Elections

■ Although the high court has never articulated when a violation of state law is or is not a violation of the process due, the failure to comply with state and local laws concerning an election has been held to constitute a violation of federal due process where the fundamental fairness of the election is called into question. It has been held that where "the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order. Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots." *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir.1981) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077–78 (1st Cir. 1978)). The Fifth Circuit applied this rule to hold that where the state officials "denied the ... electorate the right granted by state statute to choose [their elected official], we are faced with patent and fundamental unfairness." *Id.* at 703 (internal quotation omitted). The court concluded that the official's actions eroded the constitutional process by "purposely abrogat[ing] the right to vote, a right that is fundamental to our society and preservative of all individual rights." *Id.* at 703–04.

Similarly, in *Bonas v. Town of North Smithfield*, the court held that the town's decision not to hold regular elections for the town council and the school committee in its final odd-numbered year before its elections were switched to even-numbered years was an unconstitutional violation of the town charter and referendum, which caused the switch. 265 F.3d 69, 77–78 (1st Cir.2001). Also applying *Griffin*, 570 F.2d

---

4. Plaintiff challenges the regulations on the grounds of vagueness because they allow for invalidation of elections under principles of fairness. As discussed above, the court does not consider this issue under the First Amendment. Section 72023.5 of the Education Code, upon which plaintiff relies, provides that the Student Trustee "shall be chosen ... by the students enrolled in the community colleges of the district in accordance with procedures prescribed by the governing board." The governing board's procedures, thus, may address determination of irregularities and methods of responding to these irregularities so long as the Student Trustee is nonetheless chosen by the students of the District's colleges. Plaintiff only argues that defendants exceeded their authority under state law concerns the seating of a Student Trustee who was not chosen by the students.

at 1077, the court reiterated that "in those few cases in which organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches)." *Bonas*, 265 F.3d at 74. The court held that the total and complete disenfranchisement that occurred demonstrated federal jurisdiction where the town refused to hold a required election. *Id.* at 75. Thus, refusal to seat a popularly elected official, as occurred here, may offend due process. The remaining question is whether this election warrants review under the federal Constitution.

### b. Whether Elections Warrant Constitutional Scrutiny

The Supreme Court discussed whether a local election warranted scrutiny under the U.S. Constitution in *Hadley v. Junior College District*, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). There, the Court held that the apportionment system of electing student trustees among several junior colleges in a district violated the Equal Protection Clause's "one man, one vote" principle. *Id.* at 58, 90 S.Ct. 791. The Court, however, extended equal protection rights to the election of the junior college student trustee because the trustees "carry out governmental functions" and are elected by popular vote. *Id.* at 54, 90 S.Ct. 791. The community college trustees in *Hadley* could "levy and collect taxes, issue bonds with certain restrictions, hire and fire teachers, make contracts, collect fees, supervise and discipline students, pass on petitions to annex school districts, acquire property by condemnation, and in general

manage the operations of the junior college." *Id.* at 53, 90 S.Ct. 791. This language does not set forth a test for defining government function, but rather suggests that the "governmental function" the trustees served was dependent on or at least related to their broad powers over the residents of the district. Moreover, these trustees were elected by residents in a community college district, not by students enrolled in the colleges. *Id.* at 51, 90 S.Ct. 791.

Nonetheless, when explaining its reasoning, the Court declared that, "If there is any way of determining the importance of choosing a particular governmental official, we think the decision of the State to select that official by popular vote is a strong enough indication that the choice is an important one." *Id.* at 55, 90 S.Ct. 791. The Court continued and held that, "once a State has decided to use the process of popular election and once the class of voters is chosen and their qualifications specified, we see no constitutional way by which equality of voting power may be evaded." *Id.* at 59, 90 S.Ct. 791.[5]

The parties contest whether *Hadley* sets forth a two part test for constitutional scrutiny to apply to a local election. Specifically, defendants argue that plaintiff must demonstrate both (1) that the Student Trustee serves a "government function;" and (2) that the Student Trustee is popularly elected. Plaintiff argues that, under *Hadley*, it only must demonstrate that the legislature intended for the Student Trustee to be popularly elected. While plaintiff's interpretation is reasonable, the court interprets *Hadley* to re-

---

5. Persuasive authority suggests that the requirement of governmental function relates to whether a fundamental right exists, and not as to when equal protection claims arise. In *Duncan*, the court found strong parallels between the equal protection claims and due process claims concerning the right to vote:

"Just as the equal protection clause of the fourteenth amendment prohibits state officials from improperly diluting the right to vote, the due process clause of the fourteenth amendment forbids state officials from unlawfully eliminating that fundamental right." *Duncan*, 657 F.2d at 704.

quire both that the Student Trustee serve a government function and is popularly elected for his election to be entitled to review under the federal Constitution. Nonetheless, the fact that the legislature decided to have a popular election for an office provides substantial evidence that the office serves a government function.

### i. Whether the Student Trustee is Popularly Elected

As discussed in this court's prior order, there is no question that the Student Trustee is popularly elected. Specifically, the state legislature decided to have Student Trustees selected by popular election by a class of voters determined by their enrollment in a community college. Defendant argues that because this class is not the same class from which the other trustees are elected, a so-called "general public election," the Student Trustee is not publically elected. This argument simply fails under *Hadley.* The Court specifically held that an election is popular when a legislature defines a class of voters. An election does not lose its status as popular depending on how the legislature chooses a class. Rather, even if "a State ... limit[s] the right to vote to a particular group or class of people," such an election does not cease being popular. *Id.* at 59–60, 90 S.Ct. 791.

### ii. Whether the Student Trustee Serves a Government Function

Determining whether the Student Trustee serves a government function is a more difficult question. As far as the court can find, no federal court has defined a government function. Rather, the powers must be "general enough and have sufficient impact throughout the district" to qualify as a government function. *Id.* at 53, 90 S.Ct. 791.

Plaintiff argues that the Student Trustee serves a government function. While a non-voting member of the governing board, the Student Trustee nonetheless in-

fluences policy decisions that concern the general population. In support of its contention that a non-voting member of a agency may serve government functions, plaintiff cites to numerous regulatory agencies and other government bodies, which have non-voting members. While some of these examples are not directly relevant because the non-voting member of the agency is a federal government representative, some are clearly applicable. While noting that many of these positions are appointed positions, that fact does not alter a conclusion that they nonetheless serve government functions.

Defendants have raised several arguments on this question. They are either irrelevant or distinguishable. First, the court can find no significance to the fact that the legislature included the provision for election of the Student Trustee in the California Education Code rather than the California Election Code. The issue simply cannot turn on how the government organizes its statutes.

Likewise, defendants' reliance on *Flint v. Dennison,* 488 F.3d 816 (9th Cir.2007) appears inappropriate. As the court discussed in its prior order, *Flint* is distinguishable from the case at bar. Most fundamentally, the election at issue there was entirely different. That case dealt with the election of members of student government, an issue which appears not to be dictated by the state legislature. The Board of Regents ("Board") administered the student government. Moreover, the student government had very limited powers. *Id.* at 820–21. Their constitution must be approved by the Board and all their actions must comply with the policies of the Board. *Id.* The university considers the student government to be primarily an educational tool. *Id.* at 821. Here, the election at issue is mandated by state law and concerns membership in the communi-

ty college governing board. Furthermore, *Flint* concerns a challenge to the election procedure set by the Board not, as here, a claim based on the District's failure to follow a statute. Lastly, *Flint* addresses a question of the rules which a candidate must follow in running for office, not a question of whether students were disenfranchised. Because of these substantial differences between *Flint* and the case at bar, *Flint* is not controlling, and does not indicate that plaintiff's due process claim fails as a matter of law.

Third, defendants' reference to an opinion of the Attorney General[6] finding that Student Trustees do not hold civil offices, as defined by California law, does not suggest that Student Trustees do not serve government functions under federal law. *See* 62 Ops. Cal. Atty. Gen. 126, *available at* 1979 WL 29208 (Cal.A.G.1979). In this opinion, the Attorney General opined that Student Trustees do not "exercise[ ] a part of the sovereign power of the government." California law defines the sovereign powers of government as "legislative, executive or judicial." *Moore v. Panish*, 32 Cal.3d 535, 545, 186 Cal.Rptr. 475, 652 P.2d 32 (1982). In *Wilson v. San Luis Obispo County Democratic Central Committee*, 175 Cal.App.4th 489, 500, 96 Cal. Rptr.3d 332 (2009), the California Court of Appeals applied *Moore,* and held that political "[p]arty county central committee members do not exercise any sovereign powers of government." As an initial matter, California's definition of the sovereign powers of government is far from the amorphous definition of government function in *Hadley.* They are simply not the same test. Evidence of this difference can

be found in decisions from the Supreme Court, which found that the U.S. Constitution applies to political party-run primary elections. *See Smith v. Allwright,* 321 U.S. 649, 661–62, 64 S.Ct. 757, 88 L.Ed. 987 (1944) ("It may now be taken as a postulate that the right to vote in such a primary for the nomination of candidates without discrimination by the State, like the right to vote in a general election, is a right secured by the Constitution."); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953).

The court recognizes that this case raises a close call as to whether the Student Trustee serves a government function. Ultimately, this court finds that the facts that the California legislature decided to codify the election of Student Trustees and that the Student Trustee influences the administration and policies of the community college district demonstrates that the Student Trustee serves a government function, as defined in *Hadley.*

### 3. Defense of Unclean Hands

■ The defendants have not opposed this motion on the grounds that there is a triable question as to whether plaintiff has unclean hands. This is so despite defendants' request for discovery on this issue and despite defendants raising factual disputes in their response to plaintiff's statement of undisputed facts, which suggest that this defense, however, was considered by the defendants. Defendants' failure to oppose on this ground constitutes waiver of the defense here.

---

6. Defendants argue that their reliance on an opinion of the California Attorney General is somehow equivalent to plaintiff's reliance on another opinion. That is simply not the case. Plaintiff relies on such an opinion as authority as to the interpretation of state law. Defendants seek to rely on the California Attorney General's opinion as authority as to how this court should interpret the federal Constitution. Even if the Attorney General addressed an issue relevant to the instant proceedings, his opinion would be entitled to little, if any, weight in determining whether defendants' conduct offends the federal Constitution.

### IV. CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 97, is DENIED.

(2) Plaintiff's Partial Motion for Summary Judgment as to Liability, ECF No. 93, is GRANTED.

(3) Plaintiff SHALL file a motion relative to remedy such that it shall be heard on September 27, 2010. All memoranda SHALL be filed according to Eastern District of California Local Rules.

IT IS SO ORDERED.