Filed 6/20/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF CORONADO et al., Plaintiffs and Appellants, v. SAN DIEGO ASSOCIATION OF GOVERNMENTS et al., Defendants and Respondents. | D079013 (Super. Ct. No. 37-2020-00033974-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge. Affirmed.

Sloan Sakai Yeung & Wong, Madeline E. Miller, Nancy C. Miller and Christopher W. Moores for Plaintiffs and Appellants.

Meyers Nave, Deborah J. Fox, Amrit S. Kulkarni and Margaret W. Rosequist for Defendants and Respondents.

Miller Starr Regalia and Kenneth A. Stahl for Yimby Law as amicus curiae on behalf of Defendants and Respondents.

# I.

# INTRODUCTION

"The Legislature enacted the regional housing needs assessment (RHNA) procedure . . . to address the state's shortage of affordable housing." (*San Franciscans for Livable Neighborhoods v. City and County of San Francisco* (2018) 26 Cal.App.5th 596, 610.)  As a component of this process, "[v]arious regional councils of governments, in conjunction with the cities and counties within their jurisdictions and the California Department of Housing and Community Development (HCD), devise methods for distributing existing and projected housing needs within their regions and for allocating a share of the regional housing needs to each local jurisdiction." (*Ibid.*)

In *City of Irvine v. Southern California Assn. of Governments* (2009) 175 Cal.App.4th 506 (*City of Irvine*), the Court of Appeal concluded that "the administrative procedure established under Government Code section 65584[1] et seq. . . . to calculate a local government's allocation of the regional housing needs assessment (RHNA) is intended to be the exclusive remedy for the municipality to challenge that determination and thereby preclude[s] judicial review of the decision." (*Id.* at p. 510.)  Among other reasons supporting this conclusion, the *City of Irvine* court noted that in 2004, the Legislature "eliminated" a statutory provision authorizing judicial review of RHNA allocations.  (*Id.* at p. 521.)  The *City of Irvine* court reasoned that "the 2004 repeal of the judicial remedy reinforces our conclusion the Legislature clearly intended to eliminate judicial remedies for challenging a municipality's RHNA allocation."  (*Id.* at p. 522.)

---

1    Unless otherwise specified, all subsequent statutory references are to the Government Code.

2

In this action, the City of Coronado, City of Imperial Beach, City of Lemon Grove, and City of Solana Beach (collectively "the Cities") filed a combined petition for writ of administrate mandate (Code Civ. Proc., § 1094.5) and complaint for injunctive and declaratory relief (petition / complaint) against the San Diego Association of Governments and its board of directors (The Board) (collectively SANDAG).[2]  In their petition / complaint, the Cities maintained that SANDAG denied them a fair hearing when deciding the Cities' administrative appeals of SANDAG's RHNA allocations, for two reasons.  First, the Cities alleged that SANDAG unfairly used a "weighted vote" procedure in which member jurisdictions cast votes based on their respective populations rather than a "tally vote" in which each member jurisdiction has a single, evenly-weighted vote.[3]  The Cities claimed that in ruling on the Cities' administrative appeals, SANDAG had acted in a "quasi-judicial capacity" and that the use of weighted voting in this context "violate[s] fundamental tenets of procedural due process, fairness, equity." The Cities further alleged that certain members of the Board were biased against the Cities and that their decision to deny the Cities' administrative appeals was "predetermined," thereby "rendering the decision on the [a]ppeals invalid."  In their prayer for relief, the Cities requested that the trial court enter a judgment "rescind[ing]," the "Final RHNA allocation."

---

[2]    According to the petition / complaint, SANDAG is "the council of governments designated by . . . section 65584.04 to carry out the methodology and allocation of regional housing needs required by that section . . . ."  The Board is comprised of representatives of its nineteen-member local governments in the San Diego region.

[3]    The Cities explained that "SANDAG . . . utilized a weighted vote under Public Utilities Code section 132351.2, which allocates the weighted vote among its member jurisdictions based on population."

3

SANDAG filed a demurrer. In a brief supporting its demurrer, SANDAG argued that the trial court lacked jurisdiction over the action for the reasons stated in *City of Irvine*. The trial court agreed with SANDAG, stating that the *City of Irvine* court concluded that the "Legislature specifically eliminated judicial review of the RHNA allocation," and that "the same analysis applies to bar [the Cities'] claims for judicial relief." Accordingly, the court sustained SANDAG's demurrer without leave to amend, and entered judgment in its favor.

On appeal, the Cities contend that the trial court erred in concluding that *City of Irvine* precludes their action. The Cities argue that *City of Irvine* involved a substantive challenge to the municipality's RHNA allocation and does not bar their "procedural challenge," and that they are entitled to judicial redress to remedy SANDAG's use of a purportedly unfair process to decide their administrative appeals of SANDAG's RHNA allocations. The Cities also contend that their action should not be barred merely because, if they were to prevail, the " 'end result' " would be the "rescission of the [RHNA] housing allocation." The Cities also argue that the Legislature's 2004 deletion of the prior provision authorizing judicial review of an RHNA allocation is "not determinative" (boldface & capitalization omitted) as to the court's jurisdiction to entertain the Cities' challenge to the fairness of the RHNA process in this case.

We are not persuaded by any of the Cities' attempts to distinguish *City of Irvine*. For reasons that we explain in part III, *post*, we hold that *City of Irvine* is controlling and bars the Cities' action. Accordingly, we conclude

4

that the trial court properly sustained SANDAG's demurrer without leave to amend and we affirm the judgment.[4]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Cities' petition / complaint*

The Cities filed their petition / complaint against SANDAG in September 2020. In their petition / complaint, the Cities alleged that SANDAG abused its discretion and failed to provide a fair hearing in ruling on the Cities' administrative appeals of SANDAG's draft RHNA allocations (§ 65584.05).

### 1. *The Cities' summary of their action*

The Cities summarized their action as follows:

> "This action arise from SANDAG's abuse of discretion in carrying out its duties under . . . section 65584.04, including its failure to provide a fair hearing and approval due to its utilization of weighted voting under Public Utilities Code section 132351.2[5] in a quasi-judicial proceeding.
>
> "[The Cities] also did not receive a fair hearing because certain members of [the Board] were biased against [the Cities]. The[ ] . . . decision [of the members of the Board] to deny the appeals was predetermined. Therefore, [the

_____

[4]    In light of our conclusion, we need not consider SANDAG's alternative ground for affirmance, i.e., that none of the causes of action in the Cities' petition / complaint states a legally viable claim. Accordingly, we express no opinion on the legal viability of any of the claims in the Cities' petition / complaint.

[5]    As alluded to in footnote 3, *ante*, Public Utilities Code section 132351.2 outlines an "apportionment formula," (*id.*, subd. (c)) to allocate votes among the member jurisdictions that have a seat on SANDAG's Board of Directors based upon the population of each jurisdiction.

Cities] did not receive a fair hearing on the [a]ppeals because these [members of the Board] did not act as neutral and impartial decisionmakers.

". . . The [f]inal RHNA [a]llocation was preceded by and predicated upon these prejudicial abuses of discretion. Because the weighted vote on the [a]ppeals was improper and the [Cities] were not afforded neutral and impartial decisionmakers, the [c]ourt should order: (1) that the [f]inal RHNA [a]llocation approval by SANDAG be rescinded, (2) that SANDAG's denial of the [a]ppeals be rescinded, (3) that the [a]ppeals be remanded to SANDAG [for] its consideration, and (4) that SANDAG be prohibited from utilizing a weighted vote on the [a]ppeals."

2. *The Cities' description of the factual and procedural basis underlying their petition / complaint*

In their petition / complaint, the Cities explained that each of the four cities filed an administrative appeal of SANDAG's draft RHNA allocation in January 2020, pursuant to section 65584.05. The Cities outlined the numerous bases of each of their respective administrative appeals, which included grounds such as "[l]ack of [l]and [u]se [a]uthority," and "[u]nreachable [d]evelopment [e]xpectations."[6]

While the Cities' administrative appeals were pending, three jurisdictions[7] submitted objections to SANDAG's procedures for resolving the appeals. One of the objections was "that the [a]ppeals were quasi-judicial in nature and therefore should be decided by a tally vote and not a weighted vote." In addition, the Cities submitted a joint letter to SANDAG objecting to

---

[6] The grounds of the Cities' respective administrative appeals are not relevant to the present appeal.

[7] The petition / complaint does not identify the three jurisdictions.

the use of weighted voting to decide their appeals.[8]  According to the petition / complaint, "The letter . . . objected to the use of the weighted vote in the context of quasi-judicial appeals because the weighted vote would deny the appealing jurisdictions a fair hearing."

Notwithstanding these objections, in June of 2020, SANDAG used a weighted vote to determine the administrative appeals.  Based on the weighted vote, SANDAG rejected all of the appeals except for one modification to the City of Coronado's RHNA allocation.

A few weeks after the resolution of the administrative appeals, SANDAG approved the final RHNA allocation, again based on a weighted vote.

3.  *The causes of action*

The petition / complaint contains three causes of action.  In their first cause of action for a writ of administrative mandate (Code Civ. Proc, § 1094.5) the Cities claim that "[b]ecause the weighted vote of the [a]ppeals was improper, the decision on the [a]ppeals is invalid, which renders the [f]inal RHNA [a]llocation approval invalid."  In the second cause of action, also for a writ of administrative mandate (Code Civ. Proc, § 1094.5), the Cities allege, upon information and belief, that certain members of the Board were biased against the Cities and that the decision of these members to deny the Cities' appeals was improperly "predetermined."  In their third cause of action for declaratory and injunctive relief, the Cities request a declaration

---

[8]    As the Cities explain in their petition / complaint, Public Utilities Code section 132251.2 authorizes a weighted voting scheme in which votes are allocated "among [SANDAG's] member jurisdictions based on population." Thus, when a weighted vote is used, the votes of member jurisdictions with larger populations, such as Chula Vista and the City of San Diego, have greater voting weight than do the votes of member jurisdictions with smaller populations such as Coronado and Del Mar.

that SANDAG "denied [the Cities] a fair and impartial hearing," and an injunction directing SANDAG to conduct "quasi-judicial hearings on RHNA appeals to the requirement of state law. . . ."

4. *The prayer for relief*

In their prayer for relief, the Cities request a judgment that includes a writ of mandate against SANDAG stating that "[t]he [f]inal RHNA allocation approved by SANDAG on July 10, 2020, is rescinded," and "SANDAG's denial of the [a]ppeals on June 26, 2020, is rescinded."

B. *SANDAG's demurrer*

SANDAG filed a demurrer to all of the causes of action in the Cities' petition / complaint. SANDAG claimed that each cause of action was barred for lack of jurisdiction. SANDAG also claimed that each cause of action failed to state a viable claim as a matter of law.

In a supporting brief, SANDAG argued that the trial court lacked jurisdiction to consider the Cities' causes of action. SANDAG explained:

> "The Legislature . . . has specifically insulated the RHNA from . . . litigation attacks, providing that the administrative process is the exclusive remedy for any RHNA challenge. *See City of Irvine* . . . . And there is no question that this lawsuit is a prohibited attempt to seek judicial review of the housing allocation as the lawsuit specifically requests that this Court order rescindment of the final RHNA allocation approved by HCD and SANDAG. This effort by a small minority of the cities in the region to do an end run around the statutory framework, derailing the ability to address the ongoing critical housing shortage, must be rejected.
>
> "As the courts have explained, allowing lawsuits such as this, that demand rescindment of the finalized RHNA allocation, will cause gridlock and delay, destabilizing and impeding the region's ability to move forward with critical housing needs. *See City of Irvine,* [*supra,*] 175 Cal.App.4th

8

506.  To guard against such tactics, the . . . Legislature and courts have determined that the exclusive remedy for RHNA challenges is the detailed administrative procedure established under the Government Code which specifically precludes judicial review.  *See id.*  Accordingly, this lawsuit must be rejected outright for lack of jurisdiction."[9]

SANDAG supported its demurrer with a request for judicial notice, asking the trial court to take judicial notice of numerous documents, including those related to SANDAG's bylaws concerning weighted voting and the Cities' administrative appeals of the draft RHNA allocations.  SANDAG also requested that the court take judicial notice of a letter from HCD indicating its approval of SANDAG's final RHNA allocation.

C.  *The Cities' opposition*

The Cities filed an opposition to SANDAG's demurrer.  In their opposition, the Cities argued that "*City of Irvine* is [d]istinguishable."  According to the Cities, the challenge at issue in *City of Irvine* was one "aimed at recalculating an allocation," not one challenging "the administrative procedure under . . . section 65584."  The Cities maintained that they "do not seek to set aside the draft allocation," and that if the trial court were to "set aside the unfair decision of the [a]ppeals, and they are

---

[9]     SANDAG argued in the alternative that the Cities' complaints failed to state any viable claim.  With respect to the Cities' claim that the weighted voting procedure denied them a fair hearing, SANDAG argues that SANDAG's use of weighted voting is dictated by state law, namely, Public Utilities Code, section 132351.2.  SANDAG further argued that the Cities' "conclusory allegations," that certain Board members had "predetermined" the outcome of their administrative appeals failed to state a claim because the statutory scheme mandates that  "an administrative appeal . . . be made to the regional council of governments whose members have been part of the process from the start and thus will necessarily have some preexisting views and thoughts on the subject."

reheard by SANDAG, [the Cities] could still end up with the same RHNA [a]llocation as the previous hearing, but the result would occur after a fair hearing conducted with a tally vote and without bias."

The Cities argued further that *City of Irvine* was predicated "on the integrity of the administrative process," and claimed that "nothing in *City of Irvine* allows SANDAG to avoid its obligation to provide a fair hearing." The Cities also contended that the Legislature's "deletion of [a] previous provision allowing for judicial review of a RHNA allocation decision," was not dispositive as to the court's jurisdiction to entertain the Cities' challenge to the fairness of the RHNA process in this case. The Cities argued that this was so because "the court in *City of Irvine* recognized that the deletion only served to reinforce its earlier conclusion regarding the lack of judicial review of a RHNA allocation based upon the lengthy administrative process," and "in the absence of a <u>fair</u> hearing process, *City of Irvine* may have been decided differently."[10]

D. *SANDAG's reply*

SANDAG filed a reply brief in support of its demurrer. SANDAG reiterated its argument that the trial court lacked jurisdiction to consider the causes of action in the Cities' petition / complaint. In support of this contention, SANDAG argued that "[t]he crux of [the Cities'] lawsuit is their desire to have this Court vacate the final RHNA allocation plan for the San Diego region that has already been approved by both SANDAG and HCD." SANDAG noted that the Cities' prayer for relief expressly requests that "the

---

10    With respect to whether the petition / complaint stated a claim for relief, the Cities argued that "[w]eighted [v]oting is [u]nlawful for [q]uasi-[j]udicial proceedings." The Cities also argued that the "[p]etition [p]roperly [a]lleges [b]ias." In support of this argument, the Cites noted that they did "not have to prove bias at this stage of the proceeding."

Court order 'that the Final RHNA Allocation approved by SANDAG be rescinded.' " According to SANDAG, the *City of Irvine* court specifically concluded that courts lack jurisdiction to provide such relief. (Citing *City of Irvine, supra*, 175 Cal.App.4th at pp. 512, 518.)

SANDAG also argued that the Cities' petition would bring about a "disruption [of] the RHNA process," which is precluded by *City of Irvine* because "allowing judicial review would delay allocation for an entire region, [thereby] essentially bottlenecking the process and creating gridlock while a particular city's case winds through the courts." SANDAG further argued that the Cities' attempt to "fabricat[e] a distinction," between the claims at issue in *City of Irvine* and those in this case was unavailing because adjudicating the claims in either case would "caus[e] gridlock and delay in the statutory program designed to alleviate the statewide critical housing shortage," and that this was the primary basis for the *City of Irvine* court's conclusion that the Legislature intended to bar such claims. Finally, SANDAG argued that, as explained in *City of Irvine*, the Legislature limited municipalities' remedies in challenging an RHNA allocation to those available in the statutory scheme and specifically eliminated a previous statutory right to judicial review in 2004. For all of these reasons, SANDAG argued that the trial court lacked jurisdiction to adjudicate the Cities' petition / complaint.[11]

Together with its reply, SANDAG filed a request for judicial notice asking the trial court to take judicial notice of orders in two other cases

---

[11]  SANDAG also again argued in the alternative that the Cities' petition / complaint failed to state a claim. In support of this contention, among other arguments, SANDAG maintained that its actions on the Cities' RHNA appeals were quasi-*legislative* and thus, the standards for quasi-judicial hearings relied on by the Cities were inapposite.

11

concerning RHNA allocation challenges, as well as two SANDAG documents pertaining to the weighted voting distribution for fiscal year 2021.

E.  *The trial court's ruling*

The trial court entered a tentative ruling sustaining the demurrer on all of the causes of action in the petition / complaint.  The trial court reasoned in part:

> "[T]his court lacks judicial review [*sic*] of the claims.  [The Cities] characterize the claims as procedural in nature as opposed to challenging the substance of the RHNA allocations.  However, the end result, if [Cities] were to prevail, would be to rescind those housing determinations.  Regardless, the holding of *City of Irvine*[*, supra,* 175 Cal.App.4th 506] is applicable to the claims alleged.  There, the court held that the Legislature specifically eliminated judicial review of the RHNA allocation.  (*Id.* at 510, 522.)  Similarly, even though the instant facts are an indirect challenge to the allocations, the same analysis applies to bar [the Cities'] claims for judicial relief.
>
> "[The Cities] attempt to carve out relief pursuant to [section] 1094.5 from the holding in *City of Irvine*.  However, the authority cited within the *City of Irvine* opinion supports [SANDAG's] arguments that no such carve outs exist under the instant applicable scheme. . . .  Here, the Legislature has already determined the review process arising from the RHNA allocation[,] which does not include review under [section] 1094.5.  Considering the scheme as a whole and without affirmative authority such review is included, the court is not persuaded that such relief is contemplated or permitted."[12]

In its tentative ruling, the trial court stated that it would "hear from the parties as to whether leave to amend should be granted."

---

[12]    The trial court also granted all of SANDAG's requests for judicial notice.  On appeal, the Cities do not challenge the trial court's ruling on any of SANDAG's requests for judicial notice.

12

At a hearing on the demurrer at which counsel for each party presented argument, the Cities' counsel stated that if the trial court were to affirm its tentative ruling, then "we do not think an amendment could fix that jurisdictional issue."

At the conclusion of the hearing, the trial court indicated that it would confirm the tentative ruling and sustain the demurrer. The court added, "[T]hat's without leave to amend, because as I understand it there is no interest in attempting to amend."

The trial court proceeded to confirm its tentative ruling that the court lacked jurisdiction over all of Cities' claims and entered a final order sustaining SANDAG's demurrer to all of the causes of action in the petition / complaint without leave to amend.[13]

## F.  *The judgment*

The trial court entered a judgment in April 2021 dismissing the Cities' petition for writ of mandate and complaint for declaratory and injunctive relief "based on lack of jurisdiction."

## G.  *The Cities' appeal*

Cities timely filed an appeal from the judgment.[14]

---

[13]    In its final order, the trial court noted that Cities' counsel acknowledged at the hearing on the demurrer that, "if the [trial court] affirmed its [t]entative [r]uling there was no amendment that could cure the [trial court's] finding that it lacked jurisdiction . . . ."

[14]    While this appeal was pending, we granted an unopposed application of YIMBY Law to file an amicus curiae brief in support of SANDAG. According to its application, YIMBY Law "is a 501(c)(3) charitable non-profit organization with a significant interest in ensuring that cities meet their RHNA obligations." We have considered the YIMBY Law amicus curiae brief and the Cities' answer to that brief in our resolution of this appeal.

13

## III.

## DISCUSSION

*The trial court properly sustained SANDAG's demurrer without leave to amend on the ground that judicial review of SANDAG's RHNA allocation is not permitted*

The Cities contend that the trial court erred in sustaining SANDAG's demurrer without leave to amend. The Cities maintain that the trial court erred in concluding that judicial review of SANDAG's RHNA allocation is not permitted. Specifically, they maintain that the rationale of *City of Irvine* does not apply in this case and that the trial court erred in applying that decision to conclude that the Cities' action is barred.

A. *Standard of review*

In *All of US or None–Riverside Chapter v. Hamrick* (2021) 64 Cal.App.5th 751, this court restated the following well-established law governing the review of an order sustaining a demurrer without leave to amend:

> " 'A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. [Citation.] When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action.' " (*Id.* at p. 763, quoting *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608–1609.)

14

B. *Governing law*

    1. *The statutory scheme*

        a. *The housing element of a local government's general plan*

"Under the Planning and Zoning Law (§ 65000 et seq.), local governments must prepare and adopt general plans for their 'long-term . . . physical development . . . .' (§ 65300.) One of the essential components of a general plan is a housing element. (§ 65302, subd. (c).)" (*City of Irvine, supra*, 175 Cal.App.4th at p. 512.)

"A municipality's housing element 'consist[s] of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives, financial resources, and scheduled programs for the preservation, improvement, and development of housing.' (§ 65583.) It must contain '[a]n assessment of housing needs and an inventory of resources and constraints relevant to the meeting of these needs.' (§ 65583, subd. (a).)" (*City of Irvine, supra*, 175 Cal.App.4th at p. 513.) The assessment and inventory shall include " 'a quantification of the locality's existing and projected housing needs for all income levels' that 'include[s] the locality's share of the regional housing need in accordance with [s]ection 65584' (§ 65583, subd. (a)(1)) . . . ." (*Ibid.*)

        b. *HCD's development of a regional housing need allocation*

"[S]ection 65584, subdivision (b) requires HCD, 'in consultation with each council of governments,' . . . to 'determine [a] region's existing and projected housing need pursuant to [s]ection 65584.01.' " (*City of Irvine, supra,* 175 Cal.App.4th at pp. 513–514.)

15

c. *The development of a methodology for allocating the regional housing need among local jurisdictions within a region*

Section 65584.04 provides that a council of governments shall then "develop, in consultation [with HCD], a proposed methodology for distributing the existing and projected regional housing need to cities, counties, and cities and counties within the region . . . ." (§ 65584.04, subd. (a).)  Upon the completion of the methodology development process, "the council of governments . . . shall provide notice of the adoption of the methodology to the jurisdictions within the region, . . . ." (§ 65584.04, subd. (k).)

d. *The RHNA draft allocation*

"After adopting a methodology, the next step involved the preparation and revision of a draft allocation plan for the regional housing need assessment [RHNA].  It requires a 'council of governments . . . [to] distribute a draft allocation of regional housing needs to each local government in the region or subregion' '[a]t least one and one-half years prior to the scheduled [housing element] revision . . . .' (§ 65584.05, subd. (a).)  'The draft allocation shall include the underlying data and methodology on which the allocation is based.' " (*City of Irvine, supra,* 175 Cal.App.4th at p. 515.)

e. *The RHNA draft allocation administrative appeals process*

Section 65584.05 authorizes local governments to file an administrative appeal of the RHNA draft allocation and outlines the procedures for such appeals in relevant part as follows:

> "(b) Within 45 days following receipt of the draft allocation, a local government within the region . . . may appeal to the council of governments . . .  for a revision of the share of the regional housing need proposed to be allocated to one or more local governments. . . .

16

"[¶] . . . [¶]

"(c) At the close of the period for filing appeals pursuant to subdivision (b), the council of governments . . . shall notify all other local governments within the region . . . and [HCD] of all appeals and shall make all materials submitted in support of each appeal available on a publicly available internet website. Local governments and [HCD] may, within 45 days, comment on one or more appeals. If no appeals are filed, the draft allocation shall be issued as the proposed final allocation plan pursuant to paragraph (2) of subdivision (e).

"(d) No later than 30 days after the close of the comment period, and after providing all local governments within the region . . . at least 21 days prior notice, the council of governments . . . shall conduct one public hearing to consider all appeals filed pursuant to subdivision (b) and all comments received pursuant to subdivision (c).

"(e) No later than 45 days after the public hearing pursuant to subdivision (d), the council of governments . . . shall do both of the following:

"(1) Make a final determination that either accepts, rejects, or modifies each appeal for a revised share filed pursuant to subdivision (b). Final determinations shall be based upon the information and methodology described in Section 65584.04 and whether the revision is necessary to further the objectives listed in subdivision (d) of Section 65584.[15] The final determination shall be in writing and shall include written findings as to how the determination is consistent with this article. The final determination on an appeal may require the council of governments . . . to adjust the share of the regional housing need allocated

---

15    Section 65584, subdivision (d) outlines various objectives of a regional housing needs allocation plan, including those related to affordability, environmental protection, access to jobs, and residential economic integration.

17

to one or more local governments that are not the
subject of an appeal.

"(2) Issue a proposed final allocation plan."

### f.  *The RHNA final allocation*

The council of governments "shall adjust allocations to local
governments based upon the results of the appeals process. . . .  The total
distribution of housing need shall not equal less than the regional housing
need . . . ."  (§ 65584.05, subd. (f).)  "Within 45 days after the issuance of the
proposed final allocation plan by the council of governments and each
delegate subregion, as applicable, the council of governments shall hold a
public hearing to adopt a final allocation plan. . . .  The council of
governments shall submit its final allocation plan to [HCD] within three days
of adoption.  Within 30 days after the [HCD's] receipt of the final allocation
plan adopted by the council of governments, [HCD] shall determine if the
final allocation plan is consistent with the existing and projected housing
need for the region . . . ."  (*Id.* at subd. (g).)

### 2.  City of Irvine

As noted in part I, *ante*, in *City of Irvine, supra*, 175 Cal.App.4th 506
the Court of Appeal concluded that "the administrative procedure established
under . . . 65584 et seq . . . to calculate a local government's allocation of the
[RHNA] is intended to be the exclusive remedy for the municipality to
challenge that determination and thereby preclude[s] judicial review of the
decision."  (*Id.* at p. 510.)

In *City of Irvine*, the defendant, the Southern California Association of
Governments (SCAG), issued a draft RHNA allocation that allotted more
than 35,000 residential units to plaintiff, City of Irvine ("municipality").
(*City of Irvine, supra*, 175 Cal.App.4th at p. 511.)  The municipality filed an

18

administrative appeal of the proposed allocation with SCAG's RHNA appeals board. (*Ibid.*) The appeals board issued a written decision denying the appeal. (*Ibid.*) After revising the allocations of certain other jurisdictions, SCAG issued a proposed final RHNA allocation that increased the City of Irvine's allocation by more than 300 units. (*Ibid.*) Over the municipality's opposition, SCAG's regional council approved the final allocation plan without change. (*Ibid.*)

The municipality filed a petition for writ of mandate in the trial court. The *City of Irvine* court described the petition as follows:

> "[The municipality] . . . filed this petition seeking to '[v]acate and set aside' [SCAG's] draft allocation, the RHNA appeals board's denial of its appeal, and the regional council's final allocation plan, plus a '[r]ecalculat[ion of [the municipality's]] allocation of new housing units . . . .' The petition alleged that, in making the RHNA decisions, [SCAG's] appeals board and regional council 'failed to conduct . . . fair hearing[s],' 'proceed in a manner required by law,' 'support [their] decision[s] with findings' or 'provide sufficient evidence to support the findings,' and 'prejudicially abused [their] discretion,' thereby breaching defendant's 'duty pursuant to the Housing Element Law to calculate [City of Irvine's] fair share of housing for each income category . . . .'" (*City of Irvine, supra,* 175 Cal.App.4th at pp. 511–512.)

SCAG filed a demurrer, arguing that the trial court lacked " 'jurisdiction of the subject of the petition' " for several reasons, including that "the Legislature's 2004 amendments to the RHNA statutes 'specifically removed the judicial writ remedy from the . . . statute.' " (*City of Irvine, supra,* 175 Cal.App.4th at p. 512.) The trial court sustained the demurrer without leave to amend and entered a judgment dismissing the action. (*Ibid.*)

19

The municipality appealed. The *City of Irvine* court explained that the appeal "presents the question of whether the administrative procedure created to determine a municipality's RHNA allocation precludes judicial review of that decision." (*City of Irvine, supra*, 175 Cal.App.4th at p. 512.) In answering this question in the affirmative, the *City of Irvine* court concluded that "the nature and scope of a general plan's housing element and the length and intricacy of the process created to determine a municipality's RHNA allocation reflects a clear intent on the part of the Legislature to render this process immune from judicial intervention." (*Id.* at p. 517.)

In explaining the basis for this conclusion, the *City of Irvine* court first noted the interconnected nature of the intergovernmental process by which a local government's RHNA allocation is determined, which involves HCD, a council of government, local governments, as well as "concerned parties." (*City of Irvine, supra*, 175 Cal.App.4th at p. 517.) In particular, the *City of Irvine* court noted that "[u]nder the RHNA procedure, when a local government successfully obtains a downward revision of its RHNA allocation, the council of governments must then reallocate the excess units to other jurisdictions within the region." (*Id.* at p. 518.) Thus, according to the *City of Irvine* court, because "one jurisdiction's successful [administrative] appeal affects the RHNA allocation to other local jurisdictions," to permit judicial review "would require the joining of all affected local jurisdictions in the lawsuit, thereby precluding each affected municipality's completion of its housing element revision." (*Ibid.*) As a consequence, " 'allowing judicial review would . . . delay the allocation for an entire region' and 'essentially bottleneck the process and create gridlock while a particular city's case winds through the courts.' " (*Ibid.*)

20

In discussing the municipality's contention that judicial review was necessary to ensure that it received a fair hearing, the *City of Irvine* court also quoted case law supporting the proposition that " 'a governmental entity has no vested, individual rights in the administration of a particular program,' " (*City of Irvine, supra*, 175 Cal.App.4th at p. 519, quoting *Tri–County Special Educ. Local Plan Area v. County of Tuolumne* (2004) 123 Cal.App.4th 563, 578) and determined that the intergovernmental nature of the RHNA program supported the conclusion that a local municipality had no legal right to enforce in a judicial proceeding against a council of governments pertaining to its determination of an RHNA allocation. (See *City of Irvine, supra*, at p. 519.) The *City of Irvine* court reasoned, "[T]he structure and scope of the RHNA statutes reflect a clear intent to vest in HCD and the respective council of governments, along with the extensive input from local governments and the public, the authority to set the RHNA allocation for each local government," without the availability of judicial review. (*Ibid.*)

Next, the *City of Irvine* court rejected the municipality's contention that precluding judicial review "would render the law both absurd and unconstitutional because it makes [SCAG] not only the 'executive decision-maker for housing allocations' but 'also the final judge, jury and appellate tribunal for any alleged violations of those laws . . . .' " The *City of Irvine* court reasoned that the "RHNA allocation process is primarily legislative rather than adjudicatory in nature and involves the actions of more than a single entity." (*City of Irvine, supra*, 175 Cal.App.4th at p. 520.) Further, even assuming that the local government has a due process right in the administration of a particular program, the *City of Irvine* court noted that a

21

single administrative agency may legally combine investigative, prosecutorial and adjudicative functions *without* violating due process. (*Ibid.*)

The *City of Irvine* court also rejected the municipality's contention that because " 'the statutes plainly require a compliant housing element to account for 100[ percent] of the city's RHNA allocation,' " without "judicial review of the allocation[,] it has no adequate alternative remedy." (*City of Irvine, supra,* 175 Cal.App.4th at p. 520.) The *City of Irvine* court pointed out that there were statutory exceptions to the section 65584, subdivision (a)(2) requirement that a municipality's housing element should seek to facilitate the development of 100 percent of an RHNA allocation. (*City of Irvine*, at p. 520).

Finally, the *City of Irvine* court stated that "[s]upport for our decision also exists in the 2004 amendments to the RHNA statutes." (*City of Irvine, supra*, 175 Cal.App.4th at p. 521.) The *City of Irvine* summarized the changes as follows:

> "Before those amendments, former section 65584, subdivision (c)(4) declared, 'The determination of the council of governments [concerning a city or county's share of the state housing need] . . . shall be subject to judicial review pursuant to Section 1094.5 of the Code of Civil Procedure.' This provision was eliminated in 2004." (*Ibid.*)

The *City of Irvine* court reasoned that the Legislature's deletion of a statutory provision *authorizing* judicial review evinced an intent to *preclude* such review:

> "[T]he 2004 repeal of the judicial remedy reinforces our conclusion the Legislature clearly intended to eliminate judicial remedies for challenging a municipality's RHNA allocation. 'Under the rules governing statutory construction, when the Legislature enacts an amendment, we presume that this " 'indicates that it thereby intended to change the original act by creating a new right or

22

withdrawing an existing one.' " [Citation.] " 'Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights.' " [Citations.]' [Citation.] This presumption applies where 'the Legislature . . . delet[es] an express provision of a statute.' [Citations.] We must presume the Legislature's deletion of the express provision allowing review by administrative mandamus reflects its intent to preclude that judicial remedy to challenge a municipality's RHNA allocation under the revised law." (*City of Irvine, supra*, 175 Cal.pp.4th at p. 522.)

Ultimately, the *City of Irvine* court summarized its holding as follows:

"Given the RHNA statutes' nature, their allowance for public input, and their lengthy and extensive administrative procedure, it is clear the Legislature intended to eliminate resort to traditional judicial remedies to challenge a local government's regional housing needs allocation so as to avoid the disruption of local planning that would result from interference through the litigation process. Thus, contrary to [the municipality's] argument, the statutes governing the RHNA allocation procedure do reflect a clear intent to preclude judicial intervention in the process and the trial court properly found it lacked jurisdiction to review the propriety of [the municipality's] RHNA allocation." (*City of Irvine, supra*, 175 Cal.App.4th at p. 522.)

C. *Application*

The Cities' claim that *City of Irvine* does not bar their action is unpersuasive.

1. *The Cities' arguments are premised on a distinction between substantive and procedural claims that is not drawn in* City of Irvine

At the outset, we observe that all of the Cities' arguments are premised on the Cities' assertion that there is a material distinction between a

23

*substantive* challenge to an RHNA allocation and a *procedural* one. However, this distinction appears only in the Cities' briefing and not in *City of Irvine.* As noted in part III.B.2, *post*, in *City of Irvine* the court broadly held that "the statutes governing the RHNA allocation procedure . . . reflect a clear intent to preclude judicial intervention *in the process*," with no suggestion that procedural claims were outside the scope of this clear holding. (*City of Irvine, supra*, 175 Cal.App.4th at p. 522, italics added.)

Indeed, while the Cities contend that the *City of Irvine* court "did not consider any procedural claim," and maintain that *City of Irvine* "contains no citations to the fair hearing requirement in [Code of Civil Procedure] [s]ection 1094.5, subdivision (b)," in fact, the *City of Irvine* court expressly stated that the writ petition in that case "alleged that, in making the RHNA decisions, [SCAG's] appeals board and regional council 'failed to conduct . . . *fair hearing[s],*' . . . ." (*City of Irvine, supra*, 175 Cal.App.4th at p. 512, italics added.)

2. *All of the rationales offered by the* City of Irvine *court for precluding judicial review in that case apply with equal force in this case*

Even assuming that the Cities are correct that the *City of Irvine* court "did not consider any procedural claim" as to the fairness of the RHNA allocation process, the reasoning that the *City of Irvine* court offered for precluding judicial review in that case also applies in this case and makes clear that the Cities' action is barred.

To begin with, while the Cities repeatedly argue that they are not challenging the RHNA allocation itself, and that instead, they are challenging only the *procedures* that resulted in the allocation, the ultimate relief that the Cities seek in their prayer for relief is that "the [f]inal RHNA allocation approved by SANDAG . . . [be] rescinded." Moreover, because the

24

RHNA statutory process is designed to render an allocation of regional housing need (see pt. III.B.1, *ante* [describing statutory scheme]), we can reasonably conclude that the Legislature would not have intended to authorize judicial review that would *delay* the allocation and yet result in the *same* allocation, particularly because, as the Cities acknowledge in their brief, the *City of Irvine* court has already concluded that a judicial challenge that seeks an *alternative* RHNA allocation is barred.[16]

In addition, the *City of Irvine* court cited case law supporting the proposition that " 'a governmental entity has no vested, individual rights in the administration of a particular program," and reasoned that, given the intergovernmental nature of the RHNA statutory scheme, a municipality has no enforceable right against a council of governments in the council's determination of a RHNA allocation. (*City of Irvine, supra*, 175 Cal.App.4th at p. 519.) These rationales are not dependent on the purported substantive nature of the claim in *City of Irvine*, and provide additional support for the conclusion that the Cities' claims against SANDAG are barred.

The *City of Irvine* court also cited the availability of other potential remedies outside of the judicial system as a reason for concluding that judicial review is barred. (*City of Irvine, supra*, 175 Cal.App.4th at pp. 520–521.) In addition to the statutory exceptions to the requirement that a municipality seek to facilitate the development of 100 percent of its RHNA allocation that the *City of Irvine* court noted (*id.* at pp. 520–521), the RHNA administrative appeals process itself provides a potential remedy for a municipality to raise objections to its allocation. Indeed, the Cities allege in

---

16    The Cities state that the *City of Irvine* court concluded "that a jurisdiction cannot seek judicial redress for its disagreement with the number of housing units assigned in its RHNA allocation."

25

their writ petition that they raised their objections to the weighted vote procedure with SANDAG while their administrative appeal was pending. In addition, HCD is required to approve both the methodology that a council of governments uses in developing an RHNA allocation (§ 65584.04, subds. h, (i)) and the council of government's final RHNA allocation (§ 65584.05, subd. (g)). These additional administrative procedures make it clear that, as SANDAG argues, municipalities are not "without recourse" in challenging an RHNA allocation. Rather, under *City of Irvine*, municipalities "have no recourse with the courts." For all of the reasons identified by *City of Irvine*, this lack of recourse is by Legislative design.

The *City of Irvine* court also noted that its conclusion that the Legislature intended to preclude judicial review of RHNA allocations was also supported by the fact that, in 2004, the Legislature expressly *removed* a prior statutory provision *authorizing* judicial review of RHNA allocations. (*City of Irvine, supra*, 175 Cal.App.4th at p. 521.) Further, as discussed in part III.C.3, *post*, we see nothing in either the Legislative amendment or in the *City of Irvine* court's discussion of that amendment that limits its impact to, in the Cities' phrasing, "substantive" challenges to RHNA allocations.

Finally, although not emphasized in the briefs, *City of Irvine* was *not* premised on the notion that SCAG's *substantive* expertise precluded the trial court from exercising jurisdiction in that case. If that *had* been the rationale of *City of Irvine*, then there might be some basis for the Cities' arguments in this case attempting to limit *City of Irvine* to *substantive* challenges to a council of government's RHNA allocation. On the contrary, *City of Irvine* was

based on the rationales described above, none of which is dependent on the purported substantive nature of the claims raised in *City of Irvine*.[17]

In sum, *all* of the rationales identified by the *City of Irvine* court to preclude judicial review in that case support the conclusion that the trial court lacked jurisdiction to adjudicate the Cities' claims in this case.

3. *None of the specific arguments that the Cities raise are persuasive*

The Cities' arguments to the contrary are not persuasive. First, the Cities contend that *City of Irvine*'s holding is purportedly "predicated upon the court's finding that the RHNA process is so elaborate and robust that it provides complete relief." The Cities maintain that this reasoning "utterly fails," when the "administrative process itself is the subject of a writ." This argument is unpersuasive because the City of Irvine's holding is *not* predicated solely, or even primarily, on the notion that the RHNA administrative process "provides complete relief." Rather, as outlined in part III.C.2, *ante*, *City of Irvine* noted that judicial review of RHNA allocations: (1) would interfere with the administrative process and be both unmanageable and cause unreasonable delay (*City of Irvine, supra*, 175 Cal.App.4th at p. 518); (2) was not warranted given the intergovernmental nature of the RHNA allocation process (*id.* at pp. 519–520); and (3) was not intended by the Legislature (*id.* at p. 522). Further, to adopt the Cities' suggestion that any procedural challenge to the RHNA

---

17    In its reply brief, the Cities observe that section 1094.5, the statute governing petitions for administrative mandate, differentiates between procedural and substantive claims. That point is inapposite. The question posed in this appeal is whether, *under the RHHA statutory scheme* as interpreted by *City of Irvine*, a party may bring a procedural challenge to a RHNA allocation. For all of the reasons stated in the text, we conclude that the rationale of *City of Irvine* makes clear that the Legislature has precluded both procedural and substantive judicial challenges to RHNA allocations.

27

"administrative process," is permissible would eviscerate *City of Irvine*'s core holding precluding judicial review in this context, given the relative ease with which a particular claim may be characterized as "procedural." We decline to limit *City of Irvine* in a manner that is inconsistent with its reasoning and would evade the legislatively imposed limits on judicial review that the court sought to enforce.

We are similarly unpersuaded by the Cities' argument that judicial review should be permitted in this case because, according to the Cities, under the trial court's reading of *City of Irvine*, "no procedural defect would be sufficient to trigger judicial review." In support of this contention, the Cities conjure up various scenarios in which, unlike in this case, SANDAG commits various direct violations of the statutory administrative process such as "summarily den[ying] an appeal without following any of the requirements in . . . Section 65584.05."[18] Without deciding hypothetical cases that are not before this court, we again observe that, as the *City of Irvine* court held, the Legislature intended for the administrative procedure established under section 65584 et seq. to be "the exclusive remedy" for a municipality to challenge an RHNA allocation determination and that "judicial review" is not available to challenge such decision. (*City of Irvine, supra*, 175 Cal.App.4th at p. 510.) The Legislature was empowered to determine that the intergovernmental allocation process that it developed was to be self-enforcing and without judicial review. (*Id.* at p. 516 ["the Legislature may

_____

[18] Among the requirements that a council of governments must follow in adjudicating an RHNA administrative appeal are: providing local governments with notice of the appeal, making materials pertaining to the appeal available, holding a public hearing on the appeal, and issuing a determination of the appeal in writing with written findings. (See § 65584.05, subds. (c)–(e).)

28

indirectly regulate the jurisdiction of courts by abolishing or limiting substantial rights"].)

Finally, the Cities assert that the Legislative deletion of a provision authorizing judicial review of RHNA allocations in 2004 "is [n]ot [d]eterminative."[19] (Boldface omitted.) Echoing the arguments that the Cities make as to the *City of Irvine* decision, the Cities argue that "the previous language expressly authorizing judicial review relates specifically to *substantive* claims . . . ." (Italics added.) Yet, we see nothing in the former statute limiting its scope to *substantive* claims. On the contrary, the former statute broadly authorized "judicial review" of a "determination of the council of governments," (former § 65584, subd. (c)(4)) pertaining to a "city or county['s] . . . share of the regional housing need," (former § 65584, subd. (c)(1)), without any limitation as to the *type of challenge* that might be brought. Thus, the former statute is most naturally read as having authorized both procedural and substantive challenges to a determination of a city or county's regional housing need, and the statute's repeal likewise evinces the Legislature's intent to bar both types of challenges.

Accordingly, for the reasons stated in *City of Irvine,* we conclude that the trial court properly sustained SANDAG's demurrer without leave to amend on the ground that judicial review of SANDAG's RHNA allocation is not permitted.

---

[19] As discussed in part III.B.1, *ante*, the *City of Irvine* court noted that in 2004, the Legislature deleted a provision that provided, " 'The determination of the council of governments [concerning a city or county's share of the state housing need] . . . shall be subject to judicial review pursuant to Section 1094.5 of the Code of Civil Procedure.' " (*City of Irvine, supra,* 175 Cal.App.4th at p. 521 [quoting former section 65584, subdivision (c)(4)].)

IV.

DISPOSITION

The judgment is affirmed.  Cities are to bear costs on appeal.


AARON, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.