Filed 11/8/22 P. v. Carroll CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060235 |
| v. | (Super. Ct. No. 10CF2478) |
| TAD ALLEN CARROLL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Kimberly Menninger, Judge. Reversed and remanded with directions.

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Tad Allen Carroll collaborated with two others to rob Chi Bui after he left a casino early one morning in 2010. Because Bui was killed during the robbery, appellant and his cohorts were charged with special circumstances felony murder. After the preliminary hearing, appellant pleaded guilty to first degree murder and was sentenced to 25 years to life in prison. The factual basis for his plea consisted of a single sentence in which he admitted participating in a robbery during which Bui was accidentally killed.

In 2018, appellant filed a petition for resentencing pursuant to Penal Code section 1170.95.[1] Following an evidentiary hearing, the trial court denied relief based on the preliminary hearing evidence. Although that evidence did not prove appellant was the person who actually killed Bui, the trial court determined appellant was ineligible for resentencing because he was a major participant in the underlying robbery and acted with reckless indifference to Bui's life.

On appeal, appellant faults the trial court for relying on the preliminary hearing evidence because it contained a considerable amount of hearsay. In his view, the court's consideration of hearsay not only violated section 1170.95 as it was worded at the time the trial court made its ruling but also runs afoul of the statute as amended by Senate Bill No. 775 (SB 775) at the start of this year. For this and other reasons, appellant asks that we reverse the trial court's ruling and order the court to grant his petition; respondent sees no cause for reversal and seeks a straight affirmance. However, both sides acknowledge a middle-ground position: they both recognize it may be appropriate to reverse and remand to allow the trial court to apply SB 775 in the first instance.

---

[1] That statute has since been renumbered as Penal Code section 1172.6. (Stats. 2022, ch. 58, § 10.) Because that change was nonsubstantive and it occurred after briefing in this case was complete, we will cite to Penal Code section 1170.95 for ease of reference. All further statutory references are to the Penal Code unless otherwise noted.

2

Under the circumstances presented, we agree that is the most appropriate disposition. Accordingly, we reverse the trial court's order and remand the matter for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Preliminary Hearing*

#### 1. Nonhearsay Evidence

Kim Nguyen was with the victim Chi Bui when he was killed in the early morning hours of September 3, 2010. At the preliminary hearing, she testified that at around 4:30 a.m. that day, she and Bui were driving near her Santa Ana home when a car cut in front of them and blocked their way. A man, later identified as appellant, exited the car and approached Nguyen's driver's side window with a knife. He was screaming and yelling, but Nguyen could not understand what he was saying. Then he went around to the passenger side of the car, where Bui was seated. Bui exited the car and tried to run away, but appellant caught him, and they began to fight.

Nguyen ran to a nearby strip mall and called the police. From that vantage point, she could see appellant and Bui "fighting back and forth." Part of the time appellant was on top of Bui, and part of the time it was the other way around. However, at no point did Nguyen see anyone use the knife or get stabbed. Eventually, the fight stopped, appellant returned to his car, and it left the scene.

Besides Nguyen, the only other percipient witness who testified at the preliminary hearing was lead investigator Louie Martinez. He stated that when he arrived at the scene at around 5:00 a.m., Bui was lying dead in the street with blood coming out of his ears. He had tire marks across his body, and there was a small knife by his head. There were also thousands of dollars scattered in the street, including a role of twenties and a role of hundreds. Nguyen's car was in the area too, in the very spot where she had stopped when appellant's car initially cut in front of her.

## 2. Hearsay Evidence

Bui died as a result of being run over by appellant's car. The prosecution proved how that happened, as well as other circumstances surrounding the incident, by presenting hearsay evidence through Investigator Martinez and another member of the Santa Ana police force. Those two officers provided the bulk of the prosecution's case by testifying to statements they obtained from Nguyen and others during the course of the investigation.

Nguyen was interviewed the day Bui was killed. She said that prior to the incident, she and Bui were at the Hawaiian Gardens Casino in Los Angeles County from about 11 p.m. to 4 a.m., during which time Bui won several thousand dollars gambling. They had no problems making it back to Nguyen's neighborhood, but as they were driving around looking for a place to park, appellant's car cut them off, and he approached their vehicle with a knife.

Contrary to what she testified at the preliminary hearing, Nguyen told the police that when appellant came up to her driver's side window, he demanded her purse and "the money." Then he walked around to Bui's side of the car, opened his door and pulled him out of the vehicle. While Nguyen was at the strip mall talking to the police on her phone, she heard two loud "thumps" that caught her attention. After the first thump, she saw appellant hovering over Bui on the ground. Appellant was swinging his arms, and Bui was earnestly trying to push him away. After the second thump, Nguyen saw appellant's car leaving the scene.

Codefendant Barbara Hamel provided additional information about the incident. In an interview with Investigator Martinez, she admitted that she, appellant and codefendant Michael Ross went to the Hawaiian Gardens Casino to execute a robbery. Ross was the spotter inside the casino. Seeing Bui's winnings piling up, he gave Bui's description to Hamel and appellant, who were outside in the parking lot. And when Bui and Nguyen left the casino, Hamel and appellant followed them home in their car.

4

According to Hamel, appellant was the driver. After he cut off Bui and Nguyen's car in the street, he confronted them with a pocketknife that Hamel had given him. While appellant and Bui were fighting, Hamel moved into the driver's seat and turned their car around. Then appellant returned to the car. Although he had some money with him, he said Bui had put up a good fight and that he (appellant) had been stabbed. Hamel saw blood coming from appellant's shoulder and on his hands. She also noticed he didn't have the knife anymore.

Not knowing where Bui was, Hamel began to drive away. As she was doing so, she heard a loud thump and exclaimed, "Oh, my God, what was that?" Appellant said, "That was him," meaning Bui, but Hamel just kept going. She drove to Ross' apartment, where appellant gave Ross the money he had taken from Bui, which amounted to about a thousand dollars.

Asked about their motive, Hamel said that she, appellant and Ross were only out for the money and never intended to hurt anyone. She also said Bui's death was an accident.

At the time of the incident, appellant was living with Deanna Williams. She told Investigator Martinez that when appellant came home on the day Bui was killed, he had cuts and scrapes on his knees, hands and elbows. He also had a stab wound on his left shoulder.

As part of his investigation, Martinez also interviewed Shannon Latham, who is Ross' ex-girlfriend. She said that on the night Bui was killed, appellant told her that he and Ross were going to do a "lick," which Latham understood to mean a robbery. The following day, after reading about Bui's death in the newspaper, Latham called Ross and asked him if he had anything to with it. He said he didn't want to talk about it.

B. *Appellant's Guilty Plea*

Following the preliminary hearing, the prosecution filed an information charging appellant, Hamel and Ross with attempting to rob Nguyen, and robbing and

murdering Bui. A special circumstance was further alleged that Bui was killed during the commission of a felony.[2] In exchange for the prosecutor dismissing all other charges, appellant pleaded guilty to first degree murder and was sentenced to prison for 25 years to life. The factual basis for his plea, as expressed on his change of plea form, consists entirely of the following sentence: "In Orange County, California, on Sept. 3, 2010, I was participating in a robbery of Chi Bui when he was killed accidentally."

C. *Petition for Resentencing*

Five years later, in January 2019, appellant sought resentencing pursuant to section 1170.95. Following extensive briefing, the trial court issued an order to show cause and scheduled an evidentiary hearing pursuant to section 1170.95, subdivision (d)(3) (hereafter § 1170.95(d)(3)). At the time of the hearing, in the spring of 2021, that provision stated "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . . The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95(d)(3).)

At the hearing, neither side offered any new or additional evidence. Instead, the prosecution submitted on the record of conviction, which of course was not very extensive since appellant had pleaded guilty. However, that didn't make the hearing any easier. In fact, there was considerable dispute about what the court could consider as part of the record of conviction. While the prosecutor urged the court to consider the entire preliminary hearing transcript, defense counsel objected to consideration of any hearsay evidence from that hearing. Defense counsel also argued the factual basis for appellant's guilty plea trumped the preliminary hearing evidence in terms of determining his eligibility for resentencing.

---

[2] Appellant and Ross were also charged with an unrelated robbery that is not pertinent to this appeal.

6

The trial court did not accept appellant's arguments. It did admit the factual basis for appellant's plea was so terse it would have to grant his petition if that was the only information it could rely on. However, the court did not believe appellant's guilty plea precluded it from considering the preliminary hearing evidence in determining his eligibility for resentencing.

With respect to that evidence, the court initially signaled it was not going to consider any hearsay from the preliminary hearing. Then it indicated it was open to considering "reliable" hearsay and discussed the possibility of considering any and all "115 hearsay evidence." That was a reference to Proposition 115, which, through the enactment of section 872, subdivision (b), permits hearsay testimony at a preliminary hearing by law enforcement officers.

In the end, the trial court issued a written ruling that contains a factual overview of the case and a detailed legal analysis. The ruling indicates the court considered all the evidence adduced at the preliminary hearing, including the hearsay statements from Nguyen, Hamel and Williams, and the hearsay contained within those statements (i.e., double hearsay) that originated from other sources, such as appellant. Based on that evidence, the court found appellant was a major participant in Bui's robbery and acted with reckless indifference to Bui's life in carrying out that crime. Therefore, it denied his petition for resentencing.

## II. DISCUSSION

In challenging the trial court's ruling, appellant presents four grounds for reversal. First, the factual basis for his plea is solely determinative of his eligibility for resentencing, and therefore the trial court should not have considered any of the evidence from his preliminary hearing. Second, assuming the preliminary hearing evidence was in play, the trial court should not have considered any hearsay evidence from that hearing. Third, assuming the trial court was entitled to consider the entire preliminary hearing transcript, there is insufficient evidence to support its denial order. Fourth, even if the

7

denial order was proper at the time it was made and is supported by substantial evidence, he is entitled to relief under SB 775, which became effective on January 1, 2022.

We disagree with appellant's first three contentions. As for appellant's entitlement to relief under SB 775, we believe that issue is best addressed to the trial court in the first instance. Therefore, we will reverse the court's denial order and remand the matter for a new evidentiary hearing pursuant to SB 775.

A. *Legal Overview*

Appellant's arguments are grounded in Senate Bill No. 1437 (SB 1437), which narrowed the scope of vicarious liability for the crime of murder. In addition to eliminating the natural and probable consequences doctrine in murder cases, SB 1437 restricted the felony murder rule so that it can only be applied if: 1) The defendant actually killed the victim, 2) he aided and abetted the killer in committing first degree murder, or 3) he was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e).) These measures were designed to ensure the defendant's culpability is proportionate to his own mental state and involvement in the killing. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)

SB 1437 also enacted section 1170.95, which is the procedural mechanism for challenging a murder conviction based on vicarious liability. To obtain relief under that section, the defendant must show he was prosecuted for murder under the felony murder rule or the natural and probable consequences doctrine, convicted of first or second degree murder, and would not be liable for murder today because of how SB 1437 redefined that offense. (§ 1170.95, subd. (a).)

If the defendant makes a prima facie showing to that effect, the trial court is required to issue an order to show cause and, absent a concession by the People, conduct an evidentiary hearing. (§ 1170.95, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing because his conduct did in fact rise to the level of murder as redefined by SB 1437. (*Id*., subd.

8

(d)(3).) Otherwise, the defendant is entitled to vacatur and resentencing pursuant to the terms of section 1170.95.

As explained above, when the trial court conducted the evidentiary hearing in this case, section 1170.95(d)(3) provided, "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95(d)(3).) However, effective January 1, 2022, the Legislature amended that provision to read:

"At the hearing to determine whether the petitioner is entitled to relief, . . . [t]he admission of evidence . . . shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95(d)(3), as amended by Stats. 2021, ch. 551.)

With this statutory framework in mind, we now turn to appellant's arguments.

B. *Effect of Appellant's Guilty Plea*

As set forth above, the factual basis for appellant's guilty plea consisted of a single sentence in which he admitted participating in a robbery during which Bui was accidentally killed. Relying on the doctrine of res judicata, appellant argues that because the prosecution and the court accepted his guilty plea, the factual basis for the plea controls for purposes of determining his eligibility for resentencing. Therefore, the trial court erred in considering any of the evidence that was adduced at his preliminary hearing. We cannot agree.

9

A plea of guilty encompasses "all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." (*United States v. Broce* (1989) 488 U.S. 563, 569.) Once a plea is accepted, res judicata generally gives conclusive effect to the final judgment in any subsequent litigation involving the same controversy. (*People v. Davis* (1995) 10 Cal.4th 463, 514, fn. 10.) However, the doctrine of res judicata will not be applied if the legislature has created a statutory mechanism that calls for a reevaluation of the defendant's culpability under a new or different legal standard. (*People v. Carmony* (2002) 99 Cal.App.4th 317, 325-326; cf. *People v. Strong* (2022) 13 Cal.5th 698, 715-718 [a prior criminal judgment will not be given preclusive effect under collateral estoppel principles if the legal landscape surrounding that judgment has changed].)

Section 1170.95(d)(3) was designed to allow for the retroactive examination of murder convictions that have already become final. It calls on the trial court to determine whether the defendant's conduct constituted murder under the new standards set forth in SB 1437, and it also allows the parties to submit new and additional evidence on that issue. In other words, section 1170.95(d)(3) contemplates the trial court will take a fresh look at the law and the facts to determine the defendants' culpability. This structural format undermines appellant's res judicata argument, as does the wording of section 1170.95(d)(3) itself.

In fact, by its terms, the statute makes clear the trial court can consider a variety of sources in assessing the defendant's eligibility for resentencing. At the time appellant's petition was adjudicated, section 1170.95(d)(3) allowed the trial court to examine the entire record of conviction, which includes not only the plea proceedings, but the preliminary hearing as well. (*People v. Reed* (1996) 13 Cal.4th 217, 230; *People v. Perez* (2020) 54 Cal.App.5th 896, 905, review granted Dec. 9, 2020, S265254.) And, as amended by SB 775, section 1170.95(d)(3) allows the trial court to consider evidence

10

from the preliminary hearing if certain criteria are met. That being the case, we conclude the trial court did not error in relying on evidence from appellant's preliminary hearing.

C. *Consideration of Hearsay Evidence*

Appellant contends that even if the trial court properly consulted the preliminary hearing transcript, it was not entitled to consider any hearsay evidence from that hearing. Again, we disagree.

Appellant's argument is premised on Evidence Code section 300, which states that the Evidence Code applies in every action before the superior court "[e]xcept as otherwise provided by statute[.]" Because the original version of section 1170.95(d)(3) did not expressly state the Evidence Code is inapplicable to hearings conducted under that provision, appellant claims the hearsay rule within that code precluded consideration of any hearsay at his resentencing hearing.

However, as the Law Revision Commission Comments to Evidence Code section 300 explain, that section "does not affect any other statute relaxing rules of evidence for specified purposes." Section 1170.95(d)(3) is such a statute. By allowing the parties to rely on the "record of conviction" – which normally contains a fair amount of hearsay – during evidentiary hearings conducted under that section, the Legislature signaled the formal rules of evidence do not apply and that a more relaxed evidentiary standard governs in that particular setting.

This relaxation comports with the nature of a petition for resentencing under section 1170.95. Unlike a criminal trial, where the defendant is afforded a full panoply of constitutional rights and formal evidentiary safeguards, a "'hearing under section 1170.95 is not a trial *de novo* on all the original charges.' [Citation.] Rather, it is a *postconviction* . . . "'act of lenity" . . . allowing for the retroactive application of the new law governing accomplice liability . . . for defendants already serving valid sentences for murder.' [Citations.]" (*People v. Williams* (2020) 57 Cal.App.5th 652, 661.)

11

Indeed, a section 1170.95(d)(3) hearing is essentially "the opposite of a criminal prosecution." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 588.) Whereas "[a] criminal prosecution can only hurt a defendant and can never help[,]" a hearing under section 1170.95(d)(3) "can only help the defendant and can never hurt." (*Ibid.*) This distinction has been cited in several cases as a justification for tempering the rules and procedures that apply in section 1170.95 proceedings. (See, e.g., *ibid.* [upholding hearsay statements from the defendant's parole hearing as a basis for denying his resentencing petition]; *People v. Williams, supra,* 57 Cal.App.5th at p. 661 [sanctioning the use of reliable hearsay evidence at section 1170.95(d)(3) hearings]; *People v. Silva* (2021) 72 Cal.App.5th 505, 517-520, 531 [rejecting claim that judicial factfinding at section 1170.95 resentencing hearing violated the defendant's confrontation rights]; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 111 [an evidentiary hearing under section 1170.95(d)(3) does not implicate double jeopardy concerns]; *People v. Perez, supra,* 54 Cal.App.5th at p. 908, review granted Dec. 9, 2020, S265254 [trial court was entitled to consider preliminary hearing transcript at prima facie stage of the resentencing process]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [defendants do not have the constitutional right to a jury trial in section 1170.95 proceedings]; see also *People v. Myles* (2021) 69 Cal.App.5th 688, 699 [suggesting that in convictions arising from guilty pleas, section 1170.95 should be interpreted broadly to allow for the consideration of any evidence that sheds light on the defendant's eligibility for resentencing].)

Obviously, the Legislature intended to restrict the type of evidence that may be considered at a section 1170.95(d)(3) hearing when it modified the statute through the enactment of SB 775 to omit any reference to the record of conviction and to make the Evidence Code applicable to hearings conducted under that section. This was the Legislature's prerogative, and it will certainly affect how section 1170.95(d)(3) hearings will be conducted going forward. However, the logical inference from this amendment is that the Legislature did not intend to have the Evidence Code apply to the original

12

version of the statute, which was in effect at the time the trial court made its ruling in this case. After all, it is generally presumed the Legislature intends to alter existing law whenever it makes a material change or omission in the wording of a statute, such as it did when it amended section 1170.95(d)(3). (See *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 715; *City of Irvine v. Southern California Assn. of Governments* (2009) 175 Cal.App.4th 506, 522.)

For all these reasons, we are hard-pressed to fault the trial court for considering hearsay evidence from appellant's preliminary hearing in determining his entitlement to resentencing under section 1170.95(d)(3). Because that evidence was presented – as is allowed at preliminary hearings – through highly experienced law enforcement officers who were personally involved in the investigation of Bui's death and who were subject to extensive cross-examination at the preliminary hearing, it was sufficiently reliable to permit its consideration by the trial court as an indicator of the conduct underlying appellant's conviction. Therefore, the trial court did not err in relying on it to render its decision.

D. *Sufficiency of the Evidence*

Appellant's backup argument is that the evidence from his preliminary hearing – including both hearsay and nonhearsay – is insufficient to support the trial court's ruling. While conceding he was a major participant in Bui's robbery, appellant argues there is insufficient evidence he acted in a manner that was recklessly indifferent to Bui's life, so as to render him ineligible for resentencing under the newly amended felony murder rule. Again, we are not persuaded.

The substantial evidence standard governs our review of this issue. (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) The test is not whether the prosecution met its burden of proving beyond a reasonable doubt that appellant was ineligible for resentencing, but whether any rational trier of fact could have so found. (*People v. Williams, supra,* 57 Cal.App.5th at p. 663.) In asking this question, "'we review the

13

evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [trial judge] could reasonably have deduced from the evidence. [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends. [Citation.]"' [Citation.]" (*Ibid.*) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless """"upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]."'" [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Our analysis must take into account that this is a remarkably one-sided standard of review.

To act with a reckless indifference to human life, "'The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.' [Citation.]" (*In re Bennett* (2018) 26 Cal.App.5th 1002, 1021.) In other words, the defendant must have "'subjectively appreciated'" his actions were "'likely to result in the taking of innocent life.' [Citation.]" (*People v. Banks* (2015) 61 Cal.4th 788, 801-802; accord, *People v. Clark* (2016) 63 Cal.4th 522, 618-623.)

This mental state rarely exists in a defendant who plays a minor role in a garden-variety armed robbery, especially if he was not personally armed or physically present at the scene of the killing. (*People v. Law* (2020) 48 Cal.App.5th 811, 825; see, e.g., *Enmund v. Florida* (1982) 458 U.S. 782 [getaway driver did not act recklessly indifferent to the lives of the victims who were killed by his cohorts during an armed robbery]; *In re Bennett, supra,* 26 Cal.App.5th at pp. 1025-1026 [overturning reckless indifference finding where defendant helped plan the robbery but was not present at the scene of the murder].)

But if the defendant actively participated in the underlying robbery while armed with a deadly weapon and his conduct led to the victim's death, it may be entirely reasonable to infer he acted recklessly indifferent to human life. (*People v. Bascomb, supra,* 55 Cal.App.5th 1077.) Indeed, "the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life." (*Tison v. Arizona* (1987) 481 U.S. 137; accord, *People v. Strong, supra*, 13 Cal.5th at p. 706 [noting there is a significant correlation between the major participant and reckless indifferent requirements of felony murder].) This is true even if the defendant did not actually kill the victim or specifically intend for him to die. (*Ibid.*; *In re Miller* (2017) 14 Cal.App.5th 960, 969.) Therefore, it is not dispositive that Hamel was the person who killed Bui and that she did so by accident. Instead, we must consider all of the circumstances surrounding the incident in deciding whether substantial evidence supports the trial court's finding appellant acted with reckless indifference to Bui's life. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

We begin that endeavor by noting this was not a garden-variety armed robbery, where the victim was confronted while strolling down the sidewalk or tending to a cash register. Rather, as part of a preconceived plan, appellant used his car to cut off Nguyen and Bui's vehicle while they were driving down the street. This was a dangerous maneuver that immediately brought both vehicles into the mix as potential sources of deadly harm.

Of course, appellant only increased the dangerousness of the situation when he approached Nguyen's window with a knife and demanded money from her. After that, appellant went over to Bui's side of the car and forcibly removed him from the vehicle. Bui tried to run away, but appellant chased him down, and they began to fight. According to Nguyen, there was a lot of yelling and commotion going on at the time. At one point, she heard a loud thump and saw Bui on the ground with appellant on top of him, swinging his arms. Even though appellant faced some resistance during the attack

15

and ended up getting stabbed himself, he was still able to forcibly extract money from Bui during the course of the violent encounter.

Moreover, by the time appellant returned to his car, Hamel had turned the vehicle around, so he knew she intended to drive in the direction where he and Bui had just been fighting. Appellant contends that doesn't matter because there is no direct evidence that Bui was lying helplessly in the path of the vehicle when Hamel began to drive away. Appellant contends it is equally plausible that Bui was standing in the street, intentionally trying to block appellant's car when Hamel ran him over.

However, as the trial court noted, "There is no evidence that suggests [Bui] ever got up after being left in the street by [appellant] and the totality of the evidence suggests just the opposite, through an application of circumstantial evidence, that [Bui] was still down on the ground just where [appellant] left him as [he and Hamel] left the scene, running him over." In this regard, it is important to note that after hitting Bui, Hamel excitedly exclaimed, "Oh, my God, what was that?" If Bui had been standing right in front of her at the time of impact, it is unlikely Hamel would have reacted that way.

One reasonable inference from this sequence of events is that appellant knew or had very good reason to know that Bui was in the path of danger when Hamel started driving away from the scene. But despite the fact he was directly responsible for Bui's perilous predicament, appellant did nothing to prevent him from being run over, nor did he do anything to help Bui afterwards. His failure to render aid to Bui or call for assistance would evince his wanton disregard for Bui's wellbeing. (*People v. Clark, supra,* 63 Cal.4th at pp. 618-623; *People v. Banks, supra*, 61 Cal.4th at p. 803.) Regardless of whether we would adopt this interpretation, we cannot say the trial court erred under the rules of review we outlined above.

All things considered, we are satisfied the trial court's ruling enjoys substantial evidentiary support. Although the evidence that appellant acted with reckless

indifference to Bui's life is not overwhelming, it is more than adequate to meet the highly deferential standard applicable to sufficiency-of-the-evidence claims. Therefore, we reject appellant's contention to the contrary.

E. *Applicability of SB 775*

Lastly, appellant argues he is entitled to resentencing in light of SB 775, which, as detailed above, limits the consideration of hearsay at evidentiary hearings conducted pursuant to section 1170.95(d)(3). In so arguing, appellant contends SB 775 applies retroactively to his case under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740, and the hearsay at his preliminary hearing does not fall within any exception to the hearsay rule, as required by that new law.

The Attorney General disagrees with both of these contentions. However, he concedes that even if SB 775 is not retroactive, appellant would be free to file a new petition for resentencing under current law. Therefore, in the interests of judicial economy, we consider it appropriate to remand the case for a new evidentiary hearing under section 1170.95(d)(3), as amended by SB 775. That way, the trial court can apply the new evidentiary rules set forth in that section in the first instance.

Appellant does not oppose this disposition. Although he wants us to reverse the trial court's decision and order the court to grant his petition, he admits that it's a big ask, especially since the trial court has never had the opportunity to apply SB 775. Therefore, like respondent, he considers a remand for a new evidentiary hearing to be a reasonable disposition.

So do we. In fact, under the circumstances presented, we conclude a remand is the fairest and most pragmatic way to proceed because it will enable the parties to present their arguments to the trial court under current law and allow for the creation of a full and complete record for any future appellate review. (See *People v. Pineda* (2021) 66 Cal.App.5th 792, 801-802, review granted Sept. 29, 2021, S270513 [ordering remand

in case arising under section 1170.95 so the parties can fully develop their respective positions in the trial court].)

DISPOSITION

The trial court's order denying appellant's petition for resentencing is reversed and the matter is remanded for the trial court to conduct a new evidentiary hearing pursuant to section 1170.95(d)(3), as amended by SB 775.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.